A95A2795. GOLD KIST, INC. v. WILSON et al.

(469 SE2d 504)

RUFFIN, Judge.

This is the second appearance before us of the complex litigation emanating from Gold Kist's production agreements with Renade Wilson and 14 other egg and pullet producers ("the plaintiffs") and the sale of Gold Kist's egg processing facility. In *Gold Kist v. Wilson*, 213 Ga. App. 154 (444 SE2d 338) (1994), we determined that various material issues of fact remained with respect to both parties' motions for summary judgment, and the case then proceeded to trial. After a bench trial, the trial court entered judgment in favor of all 15 plaintiffs, collectively awarding them $2,350,000 in compensatory damages. Because we find the trial court's judgment incomplete due to the absence of findings of fact and conclusions of law, we remand the case for the entry of appropriate findings of fact and conclusions of law.

Gold Kist is a non-profit agricultural cooperative organized under the Georgia Cooperative Marketing Act, OCGA § 2-10-80 et seq. On September 23, 1989, Gold Kist sold its egg processing facility in Hilliard, Florida, to Hillandale Farms ("Hillandale"). Gold Kist assigned the production agreements it entered into with the plaintiffs to Hillandale and received approximately $432,000 for doing so.

Plaintiffs then sued Gold Kist for breach of oral contracts and for fraud based upon alleged misrepresentations by Gold Kist's representatives that Gold Kist would remain in the egg business indefinitely or until plaintiffs were debt-free. In Count 1, certain plaintiffs, most of whom remodeled or built new chicken houses in the early 1980s, alleged that Gold Kist employees had fraudulently or negligently advised them that Gold Kist would operate the plant for seven years, the length of a typical chicken house loan. They alleged that the value of their chicken houses and equipment decreased substantially when Gold Kist sold the Hilliard processing plant and assigned their contracts.

In Count 2, plaintiffs claimed the full amount of notified equity[1] allocated to them on Gold Kist's books. Count 3 sought the equity earned in 1989 and the patronage earnings that would have been earned on their flocks had Gold Kist not assigned them to Hillandale.

---

[1] "Notified equity" is each person's ratable share of the "allocated resources" of the cooperative.

Plaintiffs also contended that the production contracts were unassignable personal services contracts.

In Count 4, plaintiff James Crews asserted an individual breach of contract claim involving a contract he had with Gold Kist to produce eggs. In Count 5, plaintiff F. Murray asserted an individual negligence claim alleging Gold Kist negligently recommended that he purchase certain inappropriate and unnecessary equipment.

In Count 6, plaintiffs claimed they were substantially damaged by the negligent and/or fraudulent advice and broken promises of Gold Kist's agents which included: 1) advising them that Gold Kist would continue to contract with each of them so long as they continued to perform satisfactorily; 2) encouraging them to expend large sums of money for plants and equipment; 3) promising them that Gold Kist would continue to do business with them until the indebtedness secured by the plant and equipment was paid in full; 4) selling the Hilliard processing plant to a buyer lacking the financial strength of Gold Kist; and 5) causing a decrease in value of their plant and equipment by assigning their contracts to Hillandale. Plaintiffs also alleged that Gold Kist violated the Packers and Stockyard Act.

Count 7 alleged that the parties were in a confidential relationship which required Gold Kist to act with the utmost good faith; that plaintiffs sought and relied upon Gold Kist's advice regarding all aspects of their chicken operations including financial matters; and that Gold Kist failed to protect their interests. Count 7 also alleged that Gold Kist should account for any excess proceeds from the sale of eggs and chickens it received and that Gold Kist overcharged them for feed costs, medicines, vaccines, and other supplies. Plaintiffs requested an accounting for profits made on their behalf under each production contract and that Gold Kist be required to pay over profits to them.

In February 1995, the eight-day bench trial concluded. The record demonstrates that in lieu of closing arguments, both parties submitted post-trial briefs, and both agreed on the record to the date by which their briefs and proposed findings of fact and conclusions of law were to be submitted to the court. The court took the matter under advisement until July 14, 1995, and then issued a one and one-half-page final judgment which recited no findings of fact or conclusions of law but simply set forth each plaintiff's individual award.

1. Gold Kist contends the trial court erred by failing to issue findings of fact and conclusions of law pursuant to OCGA § 9-11-52 (a) and by denying its motion for findings and conclusions pursuant to OCGA § 9-11-52 (c).

"[I]n all nonjury trials in courts of record, the court shall upon request of any party made prior to such ruling, find the facts specially and shall state separately its conclusions of law." OCGA § 9-11-52 (a).

In this case, however, Gold Kist cannot show it made a formal request pursuant to subsection (a). In its motion for reconsideration of the court's order denying its request for findings and conclusions pursuant to OCGA § 9-11-52 (c), Gold Kist asserted that "[i]t was clearly within the contemplation of both parties that specific findings of fact and conclusions of law would be made in this case," referencing that part of the record where the parties agreed and the court concurred that specific findings of fact and conclusions of law would be submitted to the court by a specified date. Pursuant to this discussion, the parties submitted lengthy, detailed findings of fact and conclusions of law for the trial court's adoption. Gold Kist argues that it requested the court to issue such findings and conclusions, and that although the request is not evinced in the record, the foregoing discussion and submission demonstrates the intent of both parties that the court do so.[2]

In denying Gold Kist's motion for reconsideration, the trial court determined that "[t]he record does not reflect a request by either party for the Court to enter findings of fact and conclusions of law prior to the entry of the Court's ruling." Pretermitting whether the foregoing discussion among counsel and the court was in effect a request under OCGA § 9-11-52 (a) that such findings be made, we agree that the court abused its discretion by denying Gold Kist's post-judgment motion for the issuance of findings of fact and conclusions of law under OCGA § 9-11-52 (c).

In a case of this magnitude and complexity involving so many plaintiffs and claims, we find that it was an abuse of discretion for the trial court to fail to issue findings of fact and conclusions of law. By omitting these crucial ingredients in the judgment, appellate review has been rendered impossible. See, e.g., *Zumpano Enterprises v. Ga. Title Distrib.*, 200 Ga. App. 563 (408 SE2d 813) (1991). We caution, however, that our decision is not be read as a general rule allowing a party to dispense with the requirement that it formally request findings and conclusions pursuant to OCGA § 9-11-52 (a) or holding that a party will always be rescued from its failure to make such a request on the record. Rather, given the particular facts of this complex case, and because the record clearly shows that Gold Kist timely moved post-judgment for the issuance of findings and conclusions which are essential for appellate review, we remand for the issuance of findings of fact and conclusions of law by the trial court.

2. Because our decision with respect to Gold Kist's remaining enumerations of error will depend in part on the findings of fact and

---

[2] The plaintiffs' response to Gold Kist's motion for reconsideration states that it was the court, not Gold Kist, who instructed the parties to submit proposed findings of fact and conclusions of law.

conclusions of law issued on remand, we will not address them herein.

*Case remanded with direction. Pope, P. J., concurs. Beasley, C. J., concurs specially.*

BEASLEY, Chief Judge, concurring specially.

I concur in the judgment that the case must be remanded for findings of fact and conclusions of law to be made by the trial judge. This is so because the law requires the court to do so "upon request of any party made prior to such ruling." OCGA § 9-11-52 (a). The statute uses the word "shall." The statutory requirement is an instance of procedural due process, designed not only to assure that the court as the sole factfinder and law applicator had an evidentiary basis for its understanding of the facts but also to allow appellate review of its legal conclusions applied to those facts. The latter is discernible by the appellate court, when there is a jury trial, from the court's charge on the law. *Spivey v. Mayson*, 124 Ga. App. 775, 776 (186 SE2d 154) (1971), describes other purposes as well.

In this instance there was a sufficient request, as a matter of law, as is evident from the discussions of the court and the parties and their actions thereafter. In this regard, the case differs from *Burks v. First Union Mtg. Corp.*, 209 Ga. App. 41 (1) (432 SE2d 822) (1993), and *Cage v. Chase Home Mtg. Corp.*, 212 Ga. App. 861 (1) (443 SE2d 504) (1994), where no request was made. Here the court erred in finding, as it did in its order denying defendant Gold Kist's motion for reconsideration of the order denying Gold Kist's post-judgment motion, that "[t]he record does not reflect a request by either party for the Court to enter Findings of Fact and Conclusions of Law prior to the entry of the Court's ruling."

As evidenced by the consolidated pre-trial order, the parties planned to try the case before a jury. At the commencement of trial, at the request of plaintiffs, it was decided to proceed with a bench trial. The parties did retain the original designation that the case was to be reported. This, like findings of fact and conclusions of law, are necessary ingredients for an appeal. *Carole Lyden Smith Enterprises v. Mathew*, 193 Ga. App. 320, 321 (2) (387 SE2d 577) (1989).

At the conclusion of the lengthy trial, and after a recess, the parties announced the time table "we discussed earlier, and some stipulations" regarding the submission of exhibits and "an index, for inclusion in the clerk's records." The parties agreed and announced when their "post-trial briefs and proposed findings of fact and conclusions of law" would be submitted, which was agreeable with the court.

In accordance with the schedule, both sides submitted extensive proposed findings of fact and conclusions of law together with their respective arguments, and Gold Kist filed "Responses to Plaintiffs' Proposed Findings of Fact and Conclusions of Law."

The judgment was issued on July 14, and within two weeks Gold Kist by motion sought the absent findings and conclusions, stating that it had "requested" them so that their issuance was "mandatory" pursuant to Gold Kist's right as provided in OCGA § 9-11-52 (a). It pointed out that the nature of the case, that is, its complexity, multiple parties, and amount of money involved, and the ramifications of an unexplained judgment, confirmed the necessity for the request in the first place.

OCGA § 9-11-52 (a) provides for stated fact findings and legal conclusions. The parties agreed to submit proposed ones reflecting the view of the evidence which each side desired the court to take. The court approved of this procedure and acted upon it, except that it did not set out its findings or conclusions. Although the legal issue of the sufficiency of the request could have been easily avoided by an express and direct oral recitation or written demand by Gold Kist, the record is clear that the request was impliedly made before the judgment was filed. There is little doubt that, had the judgment been for defendant, plaintiffs would be here on the same issue, with the same arguments.

I agree with the majority that a formal request *should* be made, to obviate the risk of failure and to preclude the wasteful consumption of judicial time and parties' monetary resources.

DECIDED MARCH 4, 1996.

*Alston & Bird, Jay D. Bennett, Richard R. Hays, K. David Steele*, for appellant.
*Gibson & Spivey, Douglas L. Gibson*, for appellees.