## A09A1468. JOHNSON v. RANDOLPH COUNTY et al.

(687 SE2d 223)

PHIPPS, Judge.

Edward Johnson sued Randolph County (the "County"), the Board of Elections of Randolph County (the "BOE"), and board members in their official and individual capacities (the "Board Members"), alleging that they had violated his rights under the United States and Georgia Constitutions and conspired to commit fraud against him by attempting to have his name removed from the ballot in an election for county commissioner. The alleged attempt did not succeed, Johnson's name remained on the ballot, and he was elected. In this appeal, Johnson contends that the trial court erred in: (1) denying his motion for entry of default judgment; (2) granting summary judgment to the defendants; and (3) failing to compel discovery concerning how the Board Members voted in the election. For reasons that follow, we find no error and affirm.

The evidence, viewed in the light most favorable to Johnson,[1] showed the following. Johnson served on the Randolph County Board of Commissioners. In June 2006, in connection with a bid for re-election, Johnson submitted a nomination petition and supporting documentation to the election superintendent, who accepted the petition and documents. Johnson's name was placed on the ballot for the general election. Subsequently, the BOE assumed the role of election superintendent. By letter dated October 25, 2006, the BOE informed Johnson that it was challenging his petition for lack of a required notarization.[2] Pursuant to OCGA § 21-2-6 (b), the BOE scheduled a hearing on its challenge to occur a few days before the November 7 election.

Johnson, who is African-American, believed that the BOE challenged his petition because of his race and his association with a particular local politician.[3] In his pleadings and deposition testimony, Johnson alleged that the community had a history of racial strife. He also pointed to the timing of the challenge, which had occurred shortly before the election though his petition had been accepted by the election superintendent months before. And he pointed to the BOE's failure to examine the petition of his white competitor. Johnson also claimed that an unofficial group of citizens within the

---

[1] See *Merlino v. City of Atlanta*, 283 Ga. 186, 187 (657 SE2d 859) (2008) (on appeal from summary judgment, evidence is viewed in light most favorable to nonmoving party).

[2] See OCGA § 21-2-170 (d) (requiring that each sheet of nomination petition contain notarized affidavit of person who circulated sheet for signatures).

[3] The other politician identified by Johnson in connection with this allegation also sued the County concerning his candidacy for an elected position. See *Cook v. Randolph County*, 573 F3d 1143 (11th Cir. 2009).

community, which included all of the individual defendants, had an agenda to keep minority candidates out of office.[4]

On October 31, 2006, Johnson filed suit to prevent the BOE from holding a hearing on the challenge to his petition and removing his name from the ballot. He also sought damages pursuant to 42 USC § 1983 for alleged violations of his rights to vote and to freedom of speech and association, his substantive and procedural due process rights, and his right to equal protection of the law under the United States Constitution. He sought damages for alleged violations of these rights under the Georgia Constitution, as well. And he sought damages for the defendants' alleged conspiracy to commit fraud against him in violation of Georgia law.

On November 2, the court granted Johnson's request for injunctive relief. The election went forward, and Johnson was re-elected. Johnson subsequently sought entry of a default judgment on his remaining claims, which the court denied. The defendants moved for summary judgment, arguing, among other things, that they were immune from suit under federal and state law. The court granted their motion for summary judgment.

1. Johnson contends that he was entitled to entry of a default judgment on his claims under 42 USC § 1983 for violations of his rights under the United States Constitution, on his claims for violations of his rights under the Georgia Constitution, and on his claim for fraud under Georgia law, because the defendants did not timely answer his petition. "Under OCGA § 9-11-55 (a), a default exists when an answer is not filed within 30 days after service of the summons and complaint."[5] The defendants filed an answer within 30 days after service of the summons and petition. Johnson contends that their answer was void because the trial court previously had been divested of jurisdiction over the case when the defendants filed a notice of appeal of the court's order granting Johnson's request for injunctive relief.[6] But a "notice of appeal supersedes only the judgment appealed; it does not deprive the trial court of jurisdiction as to other matters in the same case not affecting the judgment on appeal."[7] The judgment from which the defendants appealed addressed only Johnson's request for injunctive relief, preventing the defendants from holding a hearing on Johnson's qualifications based on a finding that Johnson would suffer immediate and irreparable harm if his name was removed from the ballot. The judgment did not

---

[4] In support of this claim, Johnson cited only hearsay statements.

[5] *Nally v. Bartow County Grand Jurors*, 280 Ga. 790, 792 (6) (633 SE2d 337) (2006) (citations and punctuation omitted).

[6] See *Randolph County v. Johnson*, 282 Ga. 160 (646 SE2d 261) (2007).

[7] *Cohran v. Carlin*, 249 Ga. 510, 512 (291 SE2d 538) (1982) (citations omitted).

address the merits of Johnson's claims for damages based on the defendants' alleged violations of his constitutional rights or their alleged acts of fraud against him. Because those claims were distinct from the injunction appealed, they remained within the trial court's jurisdiction.[8] Thus, the defendants' answer to those claims was valid and timely, and the court did not err in finding that the defendants were not in default.

2. Johnson contends that the evidence revealed genuine issues of material fact precluding the grant of summary judgment on his various claims.

> [T]o prevail at summary judgment the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial.[9]

We review a grant of summary judgment de novo to determine whether there is a genuine issue of material fact.[10]

(a) *Claims Brought Under 42 USC § 1983*. Under 42 USC § 1983, a plaintiff may obtain money damages for violations of his rights under the United States Constitution and federal laws caused by actions taken under color of law. The statute creates no substantive rights, but provides a remedy for the violation of federal rights found elsewhere.[11]

(i) A local government such as the County

> may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

---

[8] See *Davis v. Harpagon Co.*, 281 Ga. 250, 253 (8) (637 SE2d 1) (2006).

[9] *McQuaig v. Tarrant*, 269 Ga. App. 236, 237 (603 SE2d 751) (2004) (footnote omitted).

[10] *Merlino*, supra at 186.

[11] *Bell v. City of Albany*, 210 Ga. App. 371, 372 (436 SE2d 87) (1993), citing *City of Oklahoma City v. Tuttle*, 471 U. S. 808 (105 SC 2427, 85 LE2d 791) (1985).

YALE LAW LIBRARY

> said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.[12]

This rule also applies to local government officials sued in their official capacities.[13] A plaintiff must prove that the governmental entity or officials worked a constitutional deprivation upon him "pursuant to an impermissible or corrupt policy which is intentional and deliberate."[14]

Johnson has pointed to no evidence creating a question of fact on this element of his § 1983 claim. His general allegations that the community had a history of racial strife and that a group of citizens had an agenda to prevent minorities from holding office do not demonstrate an intentional and deliberate policy or custom of the County that led the BOE and its Board Members to challenge his nomination petition or to treat his petition differently from other petitions.[15] The court did not err in granting summary judgment on Johnson's § 1983 claims to the County, the BOE, or the Board Members in their official capacities.[16]

(ii) The Board Members assert that they have qualified immunity from the § 1983 claims brought against them in their individual capacities. Qualified immunity protects officials performing discretionary functions from individual claims brought pursuant to 42 USC § 1983, if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[17] The test for determining entitlement to qualified immunity "is applied by considering the objective reasonableness of the official's actions (irrespective of his subjective beliefs) in light of legal rules which were clearly established at the time the action was taken."[18] The unlawfulness of the action must be apparent to a

---

[12] *Monell v. Dept. of Social Svcs.*, 436 U. S. 658, 694 (II) (98 SC 2018, 56 LE2d 611) (1978); see *Russell v. Barrett*, 296 Ga. App. 114, 121 (5) (673 SE2d 623) (2009).

[13] See *Means v. City of Atlanta Police Dept.*, 262 Ga. App. 700, 704-705 (2) (586 SE2d 373) (2003) (affirming grant of summary judgment in § 1983 action against police officers in their official capacities where there was no proof of official policy or custom promoting complained-of actions).

[14] *City of Cave Spring v. Mason*, 252 Ga. 3, 5 (310 SE2d 892) (1984); see *Doss v. City of Savannah*, 290 Ga. App. 670, 674 (1) (660 SE2d 457) (2008) (physical precedent only).

[15] See *Bell*, supra at 373 (summary judgment appropriate to municipality on § 1983 claim based on police use of excessive force, where there was no evidence of an official policy or custom of using excessive force and no evidence of other incidences of such conduct suggesting a widespread informal policy or practice of using excessive force).

[16] See id.

[17] *Harlow v. Fitzgerald*, 457 U. S. 800, 818 (IV) (B) (102 SC 2727, 73 LE2d 396) (1982) (citations omitted); see *Kline v. KDB, Inc.*, 295 Ga. App. 789, 793 (2) (673 SE2d 516) (2009).

[18] *Bell*, supra at 374 (citation omitted).

reasonable official.[19]

The Board Members contend that Georgia election law directed their actions. OCGA § 21-2-170 (d) required each sheet of Johnson's petition to contain "on the bottom or back thereof the affidavit of the circulator of such sheet, which affidavit must be subscribed and sworn to by such circulator before a notary public." And OCGA § 21-2-171 required the BOE to examine Johnson's petition for compliance with OCGA § 21-2-170 and to "disregard any pages or signatures that [were] not in conformance with the provisions of that Code section,"[20] including pages not properly notarized.[21] OCGA § 21-2-171 further authorized the BOE to summon and interrogate Johnson concerning his petition, to summon and interrogate other witnesses with knowledge relevant to the examination of the petition, and to subpoena any record relevant to the examination.[22] And OCGA § 21-2-171 specified: "If the petition fails to comply with the law, it shall be denied."[23] The record reveals that Johnson's petition did not comply with OCGA § 21-2-170 because it lacked the necessary notarization, rendering it facially defective. Given this defect, OCGA § 21-2-171 required the BOE to disregard the nonconforming pages of Johnson's petition and authorized it to hold a hearing in connection therewith.

Nevertheless, Johnson argues that these actions were in clear violation of his constitutional rights because the BOE did not similarly examine the petition of his opponent. Subsequent inquiry by the Secretary of State, instigated by Johnson, led to a determination that the opponent misrepresented in his petition his personal involvement in collecting some of the signatures contained therein. Although he does not designate it as such, Johnson appears to be making a claim for selective enforcement of the nomination petition requirements in violation of his equal protection rights.[24] But unlike Johnson's petition, the competitor's petition contained no facial deficiencies that would have appeared upon examination, and Johnson points to nothing in the record showing that, at the time the BOE challenged his petition, it had any information about his

---

[19] *Anderson v. Creighton*, 483 U. S. 635, 640 (II) (107 SC 3034, 97 LE2d 523) (1987).

[20] OCGA § 21-2-171 (a).

[21] See *Poppell v. Lanier*, 264 Ga. 473, 474 (448 SE2d 194) (1994) (pages of nomination petition were properly discarded because they were notarized by someone disqualified by statute from performing a notarial act).

[22] OCGA § 21-2-171 (b); see also OCGA § 21-2-6 (b) (allowing election superintendent to challenge candidate's qualifications "at any time prior to the election of such candidate" and to hold a hearing on the issue).

[23] OCGA § 21-2-171 (b).

[24] See generally *Zahra v. Town of Southold*, 48 F3d 674, 682-684 (2d Cir. 1995) (discussing equal protection claim premised on allegation of selective enforcement of town code).

competitor's petition that should have triggered a more extensive inquiry.

Under these circumstances, a reasonable official would not have believed that compliance with the requirements of OCGA § 21-2-171 in response to the facial deficiency of Johnson's petition constituted an unlawful action in violation of Johnson's rights. Thus, the Board Members were entitled to qualified immunity in their individual capacities against Johnson's § 1983 claims based upon the BOE's challenge to the petition.

(b) *Claims Brought Under State Law*. In determining whether the court erred in granting summary judgment to the defendants on Johnson's claims under state law, we must first consider the defendants' entitlement to sovereign or official immunity from those claims.[25]

(i) "The doctrine of sovereign immunity . . . protects all levels of government from legal action unless they have waived their immunity from suit."[26] "The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver."[27] This immunity extends to suits against counties.[28] Johnson has cited no act of the General Assembly that would permit him to recover on his state law claims against the County, the BOE or the Board Members in their official capacities.

(ii) "The doctrine of official immunity . . . offers public officers and employees limited protection from suit in their personal capacit[ies]. . . . Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure."[29] Although Johnson contends that the BOE's decision to challenge his petition was a ministerial act, he has not asserted any claims based on negligence. Nor has he pointed to any evidence that would support a finding of malice or intent to injure under Georgia law.

"[I]n the context of official immunity, actual malice means a deliberate intention to do a wrongful act."[30] "[T]he subjective mental state of a public officer or employee is irrelevant unless that mental state prompts the public officer or employee to intend a legally

---

[25] See *Cameron v. Lang*, 274 Ga. 122, 124 (1), 126 (3) (549 SE2d 341) (2001).

[26] See id. at 126 (3); *Pearson v. City of Atlanta*, 231 Ga. App. 96, 101 (5) (499 SE2d 89) (1998).

[27] Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e).

[28] *Harry v. Glynn County*, 269 Ga. 503, 504 (1) (501 SE2d 196) (1998).

[29] *Cameron*, supra at 123 (1) (footnotes omitted).

[30] *Adams v. Hazelwood*, 271 Ga. 414, 415 (2) (520 SE2d 896) (1999) (citation omitted).

unjustifiable action."[31] The record does not show that any Board Member intended a legally unjustifiable action in challenging Johnson's nomination petition for its facial deficiencies. Instead, as discussed in Division 2 (a) (ii),[32] the petition's failure to comply with statutory requirements justified the challenge. Thus, the Board Members were entitled to official immunity in their individual capacities against Johnson's state law claims.

3. Arguing that depositions filed in this case were sealed at the time he filed his notice of appeal, Johnson contends that the trial court failed to consider the depositions in ruling on the summary judgment motion and thus the grant of summary judgment must be reversed. But in the order granting summary judgment, the court stated that it had "considered the briefs and arguments, as well as the evidence presented to the Court."[33] And "we will not reverse the grant of summary judgment, even if it affirmatively appears that the trial court erroneously failed to consider a portion of the record, unless the appellant can show that a genuine issue of material fact remains for trial."[34] As explained above, Johnson has failed to make this showing.[35]

4. Johnson asserts that the trial court erred in failing to include written findings of fact and conclusions of law in its summary judgment order. Johnson had requested written findings and conclusions pursuant to OCGA § 9-11-52, and he cites in support of this claim of error cases decided under that Code section or its predecessor.[36] OCGA § 9-11-52 (a) requires a court, upon a party's request, to specify its findings of facts and conclusions of law "[i]n ruling on interlocutory injunctions and in all nonjury trials in courts of record." But in granting summary judgment, a court's failure to issue findings of fact and conclusions of law provides no basis for reversal.[37]

YALE LAW LIBRARY

---

[31] Id.

[32] Supra.

[33] See *Goddard v. City of Albany*, 285 Ga. 882, 887 (6) (684 SE2d 635) (2009) (appellate court will not hold that trial court failed to review deposition, simply because original on file with trial court remained sealed, if in its summary judgment order trial court indicated that it reviewed the record); *Gen. Motors Corp. v. Walker*, 244 Ga. 191, 193 (259 SE2d 449) (1979) (same).

[34] *Miller Grading Contractors v. Ga. Fed. Sav. & Loan Assn.*, 247 Ga. 730, 734 (3) (279 SE2d 442) (1981); see *Stanford v. Paul W. Heard & Co.*, 240 Ga. App. 869, 870 (1) (b) (525 SE2d 419) (1999).

[35] See Division 2, supra.

[36] See *Jones v. Smith*, 250 Ga. App. 486 (552 SE2d 112) (2001); *Aycock v. Morris Indus.*, 171 Ga. App. 50 (318 SE2d 780) (1984); *Bob Bennett Enterprises v. Trust Co. Bank*, 153 Ga. App. 344 (265 SE2d 311) (1980); *Gold Kist v. Wilson*, 220 Ga. App. 426 (469 SE2d 504) (1996) (physical precedent only).

[37] See *Desmond v. Troncalli Mitsubishi*, 243 Ga. App. 71, 74 (1) (532 SE2d 463) (2000).

5. Johnson contends that the court erred in failing to compel the Board Members to disclose the candidate for whom they voted in the county commission election. He argues that this voting information was relevant to the Board Members' reasons for challenging his nomination petition. But, as discussed above, because the law required the BOE to disregard the nonconforming pages of the petition upon discovering that they did not comply with statutory requirements, its action was objectively reasonable; thus, the individual Board Members' entitlement to immunity for this action did not depend upon their subjective reasons for making the challenge.[38] Under these circumstances, we find that the court's decision not to compel the voting information was not a clear abuse of the court's discretion,[39] and that Johnson has shown no harm.[40] We find no error.

*Judgment affirmed. Smith, P. J., and Bernes, J., concur.*

DECIDED NOVEMBER 20, 2009.

*Maurice L. King, Jr.,* for appellant.

*Chambless, Higdon, Richardson, Katz & Griggs, Mary M. Katz, Jason D. Lewis, Perry & Walters, Franklin T. Coleman IV,* for appellees.

---

[38] See Division 2 (a) (ii), (b) (ii), supra.

[39] See *Ford Motor Co. v. Gibson,* 283 Ga. 398, 401 (1) (659 SE2d 346) (2008).

[40] See *Brown v. Brewer,* 237 Ga. App. 145, 148 (3) (513 SE2d 10) (1999) (to prevail on appeal on claim based on court's failure to compel discovery, appellant must show alleged error was harmful).