**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 14, 2017**

# In the Court of Appeals of Georgia

A17A0551. SCHROEDER v. DEKALB COUNTY, GEORGIA et al.

MCFADDEN, Presiding Judge.

Bobby Schroeder, III alleges that the DeKalb County Recorder's Court falsely reported to the Georgia Department of Driver Services that his driver's license should be suspended because he had failed to pay a traffic ticket and had failed to appear in court. This false report, he alleges, led to his being arrested and jailed. He also alleges that the practice of the court communicating false information to the department was routine.

Schroeder filed this action for damages, asserting claims under state law and 42 USC § 1983 against the county, the chief judge of the recorder's court, the court administrator, and three John Doe defendants. The trial court granted the defendants' motion for judgment on the pleadings, and Schroeder filed this appeal.

We agree with the trial court that Schroeder's ante litem notice was not timely, so he cannot pursue his state law claims against the county and the individual defendants in their official capacities. But we find that the trial court erred in dismissing Schroeder's other claims because the defendants have not shown that they are clearly entitled to judgment. So we affirm in part and reverse in part the trial court's order of dismissal.

1. *Allegations in the complaint.*

> In considering the trial court's decision on a . . . motion for judgment on the pleadings, we apply a de novo review and thus owe no deference to the decision of the court below. Moreover, we must consider all well-pled material allegations on [Schroeder's] complaint as true, with all doubts resolved in [his] favor. We may also consider any exhibits attached to and incorporated into the complaint and the answer, also construing them in the appellant's favor. Nevertheless, . . . a motion for judgment on the pleadings should be granted only if the moving party is clearly entitled to judgment.

*Shelnutt v. Mayor & Aldermen of City of Savannah*, 333 Ga. App. 446 (776 SE2d 650) (2015) (citations and punctuation omitted). Simply put, a defendant is entitled to a "grant of a motion for judgment on the pleadings under OCGA § 9-11-12 (c) . . . only where there is a complete failure to state a cause of action[.]" *Hall v. Sencore,*

2

*Inc.*, 302 Ga. App. 367 (691 SE2d 266) (2010). In this case, the defendants' motion for judgment on the pleadings is the equivalent of a motion to dismiss for failure to state a claim because the defendants did not introduce affidavits, depositions, or interrogatories in support of their motion. *Southwest Health & Wellness, LLC v. Work*, 282 Ga. App. 619, 623 (2) (639 SE2d 570) (2006) (citation and punctuation omitted). For this reason, "[t]he motion to dismiss should not be granted unless the averments in the complaint disclose with certainty that the plaintiff[] would not be entitled to relief under any state of facts which could be proved in support of [his] claim." Id.

According to Schroeder's complaint, Schroeder received a traffic ticket in DeKalb County in 2013. He alleged that he appeared in recorder's court and was ordered to pay a fine and that he timely paid the fine, but the staff of the recorder's court failed to close his case. Moreover, he asserted, the court staff falsely informed the Georgia Department of Driver Services that Schroeder had failed to appear for his hearing, that he had failed to pay his fine, and that his driving privilege should be suspended. See OCGA § 17-6-11 (b) (Providing in part: "The court in which the charges are lodged shall immediately forward to the Department of Driver Services of this state the driver's license number if the person fails to appear and answer to the

charge against him or her. The commissioner of driver services shall, upon receipt of a license number forwarded by the court, suspend the driver's license and driving privilege of the defaulting person until notified by the court that the charge against the person has been finally adjudicated.")

In his complaint, Schroeder alleged that on August 9, 2013, an officer with the Rockdale County Sheriff's Office arrested Schroeder for driving on a suspended license and took him into custody. Schroeder asserted that he spent significant time in custody before bonding out. He alleged that on September 26, 2013, an officer with the Newton County Sheriff's Office arrested Schroeder for driving on a suspended license and took him into custody. According to Schroeder, at the time of his Rockdale and Newton County arrests, he was on first offender probation; and the Rockdale and Newton County arrests led to the initiation of probation revocation proceedings for which Schroeder was arrested and jailed from November 12, 2013, until December 10, 2013.

According to Schroeder's complaint, at some point, the recorder's court realized that it had provided the Department of Driver Services with incorrect information. Schroeder alleged in the complaint that the court sent a notice of suspension withdrawal to the department. This led to the dismissal of the Rockdale

4

and Newton County charges and the withdrawal of the probation revocation petition, according to Schroeder. Nonetheless, Schroeder claimed, he lost his job because of these events.

Schroeder alleged in his complaint that at the relevant time, Nelly Withers was the chief judge of the DeKalb County Recorder's Court and Troy Thompson was the court administrator. According to Schroeder, Judge Withers and Thompson were aware that the recorder's court was understaffed, dysfunctional, and unable to process its cases, and Judge Withers also knew that the court's computer systems produced unreliable data because the systems were flawed or because employees routinely entered data incorrectly, and that employees routinely failed to communicate correct information to the Department of Driver Services.

Schroeder sent the county ante litem notice of his claims on November 14, 2014. He filed this action for damages alleging that the defendants failed to perform their ministerial duties with due care and that their actions led to Schroeder's unlawful arrests. In addition to his state law claims, Schroeder asserted claims under 42 USC § 1983, alleging that the county, through Judge Withers, the final policymaker, and Thompson, had violated his constitutional rights by maintaining customs and policies that caused his deprivation of liberty. These customs included

chronically understaffing and underfunding the recorder's court; failing to adequately train employees; failing to implement an audit system that would have caught mistakes; hiring pursuant to a quota system, which increased the rate of errors in the court's communications with the Department of Driver Services; and failing to adequately discipline and terminate employees. And they knew that these customs and practices repeatedly had led to innocent persons being arrested, yet they failed to correct the problems.

2. *State law claims against the county and the defendants in their official capacities.*

Schroeder argues that the trial court erred in dismissing his state law claims against the county and the individual defendants in their official capacities. He argues that his OCGA § 36-11-1 notice to the county was timely because his claims did not accrue until the Rockdale and Newton County charges were dismissed in December 2013. We disagree.

OCGA § 36-11-1 provides, "All claims against counties must be presented within 12 months after they accrue or become payable or the same are barred. . . ." Generally, "the date the claim accrues [is] the date that suit on the claim can first be brought." *Hoffman v. Ins. Co. of North America*, 241 Ga. 328, 329 (245 SE2d 287)

6

(1978). Specifically, a negligence cause of action "accrues . . . when there is a negligent act coupled with a proximately resulting injury." *U-Haul Co. of Western Georgia v. Abreu & Robeson, Inc.*, 247 Ga. 565, 566 (277 SE2d 497) (1981) (citation omitted). At the latest, Schroeder's cause of action accrued when he was damaged by his August 9, 2013, arrest in Rockdale County resulting from the recorder's court allegedly misinforming the Department of Drivers Service that Schroeder's driving privilege should be suspended. See *Wallace v. Kato*, 549 U. S. 384, 388 (II) (127 SCt 1091, 166 LE2d 973) (2007) (plaintiff can file suit and obtain relief for wrongful arrest "as soon as the allegedly wrongful arrest occurred"). Thus Schroeder's November 14, 2014, ante litem notice, presented more than 12 months after the Rockdale County arrest, was too late, and his state law claims against the county are barred. Moreover, "[a] lawsuit against a county official in her official capacity is considered a suit against the county, and the official is entitled to assert any defense or immunity that the county could assert[.]" *Marshall v. McIntosh County*, 327 Ga. App. 416, 419 (2) (759 SE2d 269) (2014) (citations and punctuation omitted). So the trial court properly dismissed Schroeder's state law claims against the county and the individual defendants in their official capacities. However, because the ante litem notice requirements of OCGA § 36-11-1 do not apply to state law claims against

7

defendants in their individual capacities, see *Coweta County v. Cooper*, 318 Ga. App. 41, 44 (733 SE2d 348) (2012), or to actions filed pursuant to 42 USC § 1983, see *White v. City of Atlanta Police Dept.*, 289 Ga. App. 575, 576 (3) (657 SE2d 545) (2008); *Majette v. O'Connor*, 811 F2d 1416, 1418 (11th Cir. 1987), we address the dismissal of those claims below.

3. *State law claims against the defendants in their individual capacities*.

Schroeder argues that the trial court erred in dismissing his state law claims against the defendants, including the John Doe defendants, in their individual capacities on the ground of official immunity, because he alleged the negligent performance of ministerial acts. We agree.

> [A] public officer or employee may be personally liable for ministerial acts negligently performed. . . . A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. The determination of whether an action is discretionary or ministerial depends on the character of the specific actions complained of, not the general nature of the job, and is to be made on a case-by-case basis. The single overriding factor is

whether the specific act from which liability allegedly arises is discretionary or ministerial.

*Pearce v. Tucker*, 299 Ga. 224, 227 (787 SE2d 749) (2016) (citations, punctuation, and emphasis omitted). "At this early stage of the case, it was premature for the trial court to conclude that [the defendants'] duties were discretionary rather than ministerial," *Marshall*, 327 Ga. App. at 420 (3) (a) (citation and punctuation omitted), because

> it cannot be said that the allegations of the complaint disclose with certainty that [Schroeder] would not be entitled to relief under *any* state of provable facts asserted in support. For example, there conceivably could be evidence of some explicit detailed laundry list of discrete tasks each individual defendant was required to perform . . . . [I]t does not matter that the existence of such a laundry list is unlikely.

*Austin v. Clark*, 294 Ga. 773, 775 (755 SE2d 796) (2014) (citation omitted; emphasis in original). Schroeder's "complaint alleging that [his] injuries were caused by the individual defendants' negligent performance of ministerial duties satisfies the minimal requirements of notice pleading as set forth in our case law, allowing this lawsuit to survive a motion [for judgment on the pleadings] based on official immunity and to proceed into discovery." Id. at 776 (Nahmias, J., concurring).

Schroeder's allegations do not show that the defendants in their individual capacities are clearly entitled to judgment on the ground of official immunity and the trial court erred in dismissing these claims.

4. *Judicial immunity.*

Schroeder argues that the trial court erred in dismissing his complaint against Judge Withers on the ground of judicial immunity. We agree.

"Judicial immunity shields judicial officers from liability in civil actions based on acts performed in their judicial capacity that are not undertaken in the complete absence of all jurisdiction." *Considine v. Murphy*, 297 Ga. 164, 170, n. 4 (3) (773 SE2d 176) (2015) (citations omitted); see also *Earl v. Mills*, 275 Ga. 503, 504 (1) (570 SE2d 282) (2002). As both this court and the United States Supreme Court have explained, judicial immunity "'applies even when [a] judge is accused of acting maliciously and corruptly[:] it is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.'" *Maddox v. Prescott*, 214 Ga. App. 810, 813 (1) (449 SE2d 163) (1994), quoting *Pierson v. Ray*, 386 U. S. 547, 554 (87 SCt 1213, 18 LE2d 288) (1967). The same immunity also applies to "officers appointed by the court if their

10

role is simply 'an extension of the court.'" *Considine*, 297 Ga. at 169, n. 4, quoting *West End Warehouses v. Dunlap*, 141 Ga. App. 333, 334 (233 SE2d 284) (1977) (special masters are entitled to judicial immunity).

The amended complaint does not allege that the Recorder's Court exceeded its jurisdiction when it adjudicated his original citation. The question we face, then, is whether the acts of which Schroeder complains are "judicial acts" to which absolute judicial immunity should apply. It is well-established that whether an act by a judge is "judicial" depends on "the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman,* 435 U. S. 349, 362 (II) (98 SCt 1099, 55 LE2d 331) (1978). The United States Supreme Court has held, however, that judges may not claim absolute immunity for acts taken in an administrative rather than adjudicatory capacity, such as "supervising court employees and overseeing the efficient operation of a court," because such acts "were not themselves judicial or adjudicative." *Forrester v. White*, 484 U. S. 219, 229 (IV) (108 SCt 538, 98 LE2d 555) (1988).

This complaint alleges that the judge and staff of the Recorder's Court failed in their respective job duties when they set court policy and maintained court customs

11

that they knew to result in the systematic arrest of innocent persons and that actually resulted in the improper processing of Schroeder's original traffic citation and his later arrest for driving with a suspended license. It is true that under the Code of Judicial Conduct, judges "shall perform *judicial and administrative* duties competently, diligently, and without bias or prejudice[,] shall maintain professional competence in judicial administration, and shall cooperate with other judges and court officials in the administration of court business." Canon 2, Rule 2.5 (A) and (B) (emphasis supplied). Rule 2.12 (A) provides that judges "shall require their staffs, court officials and others subject to their direction and control to observe the standards of fidelity and diligence that apply to the judges[.]" But even if these administrative actions are functions "normally performed by a judge," neither Judge Withers nor her administrators can claim absolute judicial immunity as to them. This amended complaint successfully pleads that Judge Withers and Thompson were performing "non-judicial" acts when they engaged in administrative functions at the Recorder's Court. Accordingly, the trial court erred in dismissing the claims against Judge Withers on the ground of judicial immunity.

5. *Claims under 42 USC § 1983.*

12

Schroeder enumerates as error the dismissal of his claims under 42 USC § 1983 against DeKalb County, the individual defendants in their official capacities, and the individual defendants, including the John Doe defendants, in their individual capacities.

(a) *John Doe defendants*.

Although he enumerates as error the dismissal of his 42 USC § 1983 claims against the John Doe defendants, Schroeder's complaint does not allege claims under 42 USC § 1983 against the John Doe defendants. Nor does Schroeder support his enumeration of error regarding the John Doe defendants with argument. See Ct. App. Rule 25 (c) (2). Therefore, Schroeder has abandoned any claim of error pertaining to the trial court's dismissal of any § 1983 claims against the John Doe defendants, and we address only his arguments regarding the county, Judge Withers, and Thompson.

(b) *DeKalb County and Judge Withers and Thompson in their official capacities*.

A local government such as the [c]ounty may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an

13

entity is responsible under § 1983. This rule also applies to local government officials sued in their official capacities.

*Johnson v. Randolph County*, 301 Ga. App. 265, 267-268 (2) (a) (i) (687 SE2d 223) (2009) (citations omitted). In other words, "a county is liable only when the county's official policy causes a constitutional violation." *Grech v. Clayton County*, 335 F3d 1326, 1329 (II) (A) (11th Cir. 2003) (punctuation omitted). To establish the county's official policy, Schroeder must

> identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county. Because a county rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs, and [Schroeder], must show that the county has a custom or practice of permitting it and that the county's custom or practice is the moving force behind the constitutional violation. Under either avenue, a plaintiff (1) must show that the local governmental entity, here the county, has authority and responsibility over the governmental function in issue and (2) must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue.

Id. at 1329-1330 (II) (A) (citations, punctuation, and footnote omitted).

The trial court ruled that Schroeder did not allege facts that showed a county policy or custom of widespread miscommunication with the Georgia Department of Driver Services prior to his arrest and that he did not allege facts to show a deliberate county policy or custom of failure to train. We disagree.

Schroeder alleged that the county, through Judge Withers's actions as a final policymaker, developed and maintained customs and policies that led to the deliberate indifference to his due process rights and his liberty interest. These customs included the chronic understaffing and underfunding of the court staff; the long-term failure to adequately train the staff; and the failure to implement a system to check and reduce error. He alleged that Judge Withers and Thompson had actual knowledge of repeated instances where the actions of the recorder's court clerks caused innocent people to be arrested, yet they did virtually nothing to correct the problems. "[W]e cannot say at this early pleading stage of the litigation that [Schroeder] will be unable to present evidence demonstrating that" the allegedly wrongful suspension of his driver's license and violation of his liberty interest were caused by a county policy or custom, as shown through the repeated acts of a final policymaker for the county. *Shelnutt*, 333 Ga. App. at 454 (3). Compare *Searcy v. Ben Hill County School Dist.*, 22 FSupp3d 1333, 1341 (MD Ga. 2014) (plaintiffs failed to state a claim under §

15

1983 against local government entity when their allegations concerned the customs and practices of employees instead of the customs and practices that could be attributed to the government entity or to a final policymaker of the government entity).

(c) *Judge Withers and Thompson in their individual capacities*.

Schroeder argues that the trial court erred in dismissing his 42 USC § 1983 claims in their individual capacities on the ground of qualified immunity. We agree.

> Qualified immunity protects officials performing discretionary functions from individual claims brought pursuant to 42 USC § 1983, if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The test for determining entitlement to qualified immunity is applied by considering the objective reasonableness of the official's actions (irrespective of his subjective beliefs) in light of legal rules which were clearly established at the time the action was taken. The unlawfulness of the action must be apparent to a reasonable official.

*Johnson*, 301 Ga. App. at 268-269 (2) (a) (ii) (citations omitted). The trial court ruled that Judge Withers and Thompson were entitled to qualified immunity from Schroeder's 42 USC § 1983 claims against them in their individual capacities because Schroeder failed "to allege specific prior incidents prior to his alleged injuries that

16

could have put [them] on notice that widespread unconstitutional conduct was occurring" and did "not plausibly allege[] that [they] were on notice that specific additional training was necessary for [r]ecorder's [c]ourt staff, much less that they acted with deliberate indifference resulting in Mr. Schroeder's arrests." The court applied the wrong standard.

> Under current Georgia law, it is not necessary for a complaint to set forth all of the elements of a cause of action in order to survive a motion to dismiss for failure to state a claim. Rather, the Georgia Civil Practice Act requires only notice pleading and, under the Act, pleadings are to be construed liberally and reasonably to achieve substantial justice consistent with the statutory requirements of the Act. . . . [I]f, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient.

*Campbell v. Ailion*, 338 Ga. App. 382, 384 (790 SE2d 68) (2016) (citations omitted).

Schroeder alleged that

> [Judge] Withers and Thompson had actual knowledge of repeated instances where the recorder['s] court clerks cause[d] innocent persons to be deprived of their liberty without probable cause. Despite having actual knowledge that ordinary citizens were suffering deprivations of liberty due to the repeated errors of the recorder['s] court clerks, [Judge] Withers and Thompson did virtually nothing to eliminate or substantially reduce the error rate among the recorder['s] court clerks.

17

It is true, as the trial court held, that Schroeder failed to allege specific incidents that occurred prior to his alleged injuries that could have put Judge Withers and Thompson on notice. But at this early stage, it cannot be said that Schroeder will not be able to introduce evidence of the repeated incidents that he alleged, and the trial court erred in dismissing this claim.

*Judgment affirmed in part and reversed in part. Branch and Bethel, JJ., concur.*