297 Ga. 164
FINAL COPY

S14G1202.  CONSIDINE v. MURPHY et al.

NAHMIAS, Justice.

We granted certiorari to review the Court of Appeals' decision affirming the dismissal of Cecily Considine's lawsuit against the receivers appointed in her separate lawsuit against Michael Affatato on the ground that the receivers have official immunity.  We conclude that this lawsuit against the receivers should instead have been dismissed on the ground that Considine failed to obtain leave from the trial court in her lawsuit against Affatato before filing a separate lawsuit against the receivers appointed in that case.  We affirm the Court of Appeals' judgment on this ground, and we therefore vacate the court's discussion of immunity.

1.     In April 2008, Cecily Considine filed a lawsuit in the Superior Court of Cherokee County against her former business partner, Michael Affatato.  She alleged conversion, unjust enrichment, fraud, and multiple other claims arising out of a bitter dispute over the right to manage and control the assets of a company known as Model Master, which Considine describes as a business

"with international presence in engineering and 3D modeling technology." On September 3, 2008, the court entered a Consent Order finding that "the appointment of a receiver pursuant to OCGA §§ 9-8-1 through 9-8-14 is necessary to preserve the property of Model Master during the pendency of this litigation." The Consent Order instructed Considine and Affatato to identify a mutually agreeable receiver within 14 days, listed the "limited purposes" of the receiver's appointment, and required the receiver to make a final accounting to the court prior to discharge. The Consent Order concluded:

> The Receiver shall have no responsibility to the parties hereto other than to perform faithfully within the directions contained in this Order. The Receiver shall not be liable to the parties hereto for any losses, liabilities, expenses, claims, damages, or demands arising out of or in connection with said performance, except for gross negligence or willful misconduct, as determined by a Court of competent jurisdiction.

Considine and Affatato then executed a letter agreement with certified public accountant George W. Murphy and his accounting firm, Murphy & McInvale, P.C. (M&M), "confirm[ing] the engagement of Murphy & McInvale . . . as the Court appointed Receiver for Model Master." The agreement incorporated the Consent Order by reference and repeated its language concerning the receivers' liability. In September 2009, the court entered a

2

stipulation and consent order expanding the receivers' authorization "to include all powers allowed a receiver under Georgia law."

On September 29, 2010, while her lawsuit against Affatato was still pending and without seeking prior approval from the court in that case, Considine filed a separate lawsuit in the Superior Court of Cherokee County against Murphy and M&M, raising claims of gross negligence and breach of fiduciary duty based on their alleged mismanagement of the receivership; she later amended her complaint to add additional claims. The receivers filed a motion to dismiss under OCGA § 9-11-12 (b) (1), asserting that the court lacked subject matter jurisdiction based on their official immunity and Considine's failure to obtain leave of court in the Affatato case before filing a separate lawsuit against them. The trial court held a hearing on the motion, but Considine voluntarily dismissed her lawsuit against the receivers before the court issued an order.

On October 13, 2011, again without seeking prior approval from the court in the Affatato lawsuit, Considine filed the lawsuit now at issue against the receivers, raising claims of breach of contract, breach of fiduciary duty, gross negligence, and willful and wanton misconduct and seeking an accounting,

3

damages, and other relief. On December 20, 2011, the receivers again filed a motion to dismiss for lack of subject matter jurisdiction along with a verified answer raising as defenses, among other things, official immunity and Considine's failure to obtain leave in the Affatato case to sue the receivers. Eight days later, the trial court dismissed the lawsuit with prejudice, finding that "because Defendants [Murphy and M&M] were acting in their capacity as a court appointed receiver, they are entitled to official immunity [under the Georgia Constitution]."

In Considine v. Murphy, 320 Ga. App. 316 (739 SE2d 777) (2013) (Considine I), the Court of Appeals reversed that judgment on the ground that the trial court ruled on the motion to dismiss less than 30 days after it was filed, depriving Considine of proper notice and an opportunity to be heard. See id. at 317-318. On remand, Considine filed a response to the motion to dismiss, but on June 5, 2013, the trial court again dismissed the complaint based on official immunity. In Considine v. Murphy, 327 Ga. App. 110 (755 SE2d 556) (2014) (Considine II), the Court of Appeals affirmed, holding in Divisions 1 and 2 of its opinion that the trial court correctly determined that Murphy and M&M were court-appointed receivers and that Considine had waived her argument that

4

M&M could not be appointed as a receiver because it was a corporate entity. See id. at 112-114. In Division 3, the Court of Appeals upheld the dismissal of Considine's lawsuit against the receivers based on official immunity, explaining that the receivers' duties were discretionary and Considine did not "point to any evidence in the record . . . that [the receivers] acted with. . . actual malice." Id. at 115.

This Court granted Considine's petition for certiorari, noting two issues with which we were particularly concerned: (1) Under what circumstances is a court-appointed receiver entitled to immunity from suit?, and (2) Did the Court of Appeals err in affirming the trial court's order granting the motion to dismiss based on a failure to present evidence of actual malice?[1] Upon review of the entire record, however, we have determined that we need not address those issues to properly resolve this case.[2]

---

[1] Considine was represented by counsel in the trial court and the Court of Appeals, but she is pro se in this certiorari proceeding.

[2] We note that in posing the second question, we directed the parties' attention to Austin v. Clark, 294 Ga. 773 (755 SE2d 796) (2014). However, Austin involved a motion to dismiss for failure to state a claim, see OCGA § 9-11-12 (b) (6), not a motion to dismiss for lack of subject matter jurisdiction, see OCGA § 9-11-12 (b) (1), which was the type of dismissal motion the trial court granted in this case. The Court of Appeals therefore applied the correct standard in reviewing the motion to dismiss. See Considine II, 327 Ga. App. at 111 (citing OCGA § 9-11-12 (b) (1) and Dept. of Transp. v. Dupree, 256 Ga. App. 668 (570 SE2d 1) (2002)).

2.     OCGA § 9-8-8 (a) says, "The receiver is an officer and servant of the court appointing him, is responsible to no other tribunal than the court, and must in all things obey its direction."  For almost 140 years, this Court has recognized that court-appointed receivers are indeed "responsible to no other tribunal" than the appointing court for their actions with respect to the receivership, and thus no suit may proceed against a receiver without first obtaining leave of the court appointing him.  See DeGraffenried v. Brunswick & Albany R.R. Co., 57 Ga. 22, 23 (1876) (citing a statutory predecessor to OCGA § 9-8-8 (a)).  As the United States Supreme Court said five years later in Barton v. Barbour, 104 U. S. 126 (26 LE 672) (1881), "It is a general rule that before suit is brought against a receiver leave of the court by which he was appointed must be obtained."  Id. at 128.  See also McNulta v. Lochridge, 141 U. S. 327, 330 (12 SCt 11, 35 LE 796) (1891) (discussing the "general and familiar principle of law" that receivers may not be sued without prior leave of the court that appointed them); Bugg v. Consolidated Grocery Co., 155 Ga. 550, 555 (118 SE 56) (1923) (explaining that "the general rule for generations has been that receivers are not subject to suits of any kind, unless the court which appointed him would grant leave for such suit to be entered").

6

This rule, sometimes called the "Barton doctrine," remains a matter of subject matter jurisdiction in Georgia courts. See Fried v. Sullivan, 27 Ga. App. 326, 327 (108 SE 127) (1921) ("While the courts are not all agreed in holding that leave to sue a receiver is jurisdictional and essential to the maintaining of an action, this is not an open question in Georgia."). In states like Georgia that treat the rule as jurisdictional, the prior-leave requirement applies even to a separate lawsuit filed in the same court that appointed the receiver. See, e.g., Links v. Conn. River Banking Co., 33 A. 1003, 1004 (Conn. 1895) ("A receiver appointed by judicial authority cannot, in the absence of a statute to the contrary, be subjected to suit without the leave of the court whose officer he is, granted in the cause in which he was appointed."). See also R.E. LaG., Annotation, Failure to Obtain Permission to Sue Receiver as Affecting Jurisdiction of Action, 29 ALR 1460 (1924).

> The administration of [the company's] estate is in the hands of the [s]uperior [c]ourt . . . , but only in the exercise of its jurisdiction over the cause in which the receiver was appointed. [The court] can no more make orders to affect that cause, while sitting to hear another, between different parties, pending in the same county, than if it were a different court, or in session in a different county. These distinctions are not merely formal[; t]hey are essential to the administration of justice. An estate in the possession of a receiver

7

must be administered in the presence of those who were parties to the appointment, or they would be denied their day in court.

Links, 33 A. at 1004.

Considine does not claim that she sought leave from the court in the Affatato case to file this separate lawsuit against the receivers appointed in that case. And she cannot invoke Georgia's limited statutory exception to the Barton doctrine.[3] Instead, Considine contends that the 2008 Consent Order in the

---

[3] According to the dissent in Barton, by 1881 it had become common practice, when a railroad corporation was unable to pay its debts, for a court to appoint a receiver to operate the railroad for an extended duration with only occasional input from the appointing court. See Barton, 104 U. S. at 137-138 (Miller, J., dissenting). The dissent noted that this common practice was "wholly the work of courts of chancery and not of legislatures," id. at 137, and warned that as a result of the majority's decision, all disputes arising out of the "vast transactions" of the railroad business of the entire country would be withdrawn from the jurisdiction of the courts that would ordinarily have jurisdiction of such matters and be "tried alone in the [equity] court which appointed the receiver," where "the right of trial by jury. . . is denied to the person injured," id. at 139. A few years later, Congress enacted a statute authorizing suits against federal receivers of property without prior leave of the appointing court with respect to "any act or transaction of his in carrying on the business connected with such [receivership] property." See Act of Mar. 3, 1887, ch. 373, § 3, 24 Stat. 552, 554 (codified as amended at 28 USC § 959 (a)). In 1895 and 1896, the Georgia General Assembly enacted similar legislation limited to suits against receivers operating railroads. See Ga. L. 1895, p. 103; Ga. L. 1896, p. 63. See also Harrell v. Atkinson, 9 Ga. App. 150, 152-153 (70 SE 954) (1911) (comparing the federal and Georgia statutory exceptions to the Barton doctrine and noting that "the right to sue a receiver without permission of the court, resting upon exceptions provided by statute, is confined to the express terms of this enactment"). The Georgia legislation is now codified at OCGA § 46-8-314, which says:

> Actions may be brought against receivers, trustees, assignees, and other like officers operating railroads in this state, in the same county, and service may be perfected by serving them or their agents in the same manner, as if the action had been brought against the corporation whose property or franchise is being operated by them. All such actions may be brought without leave to sue first having been obtained from any court.

The business in receivership here, Model Master, is not a railroad company.

Affatato case gave her leave in advance to file separate lawsuits against the yet-to-be-named receivers, which she then exercised in 2010 and again in 2011 when she filed her lawsuits against Murphy and M&M.

Considine bases her argument on the provision of the Consent Order saying:

> The Receiver shall not be liable to the parties hereto, for any losses, liabilities, expenses, claims, damages, or demands arising out of or in connection with said performance, except for gross negligence or willful misconduct, as determined by a Court of competent jurisdiction.

This provision, however, addresses the types of claims that Considine and Affatato might be able to bring against the receiver in the future; it does not authorize any claims to be brought in a lawsuit separate from the Affatato case and without leave given by the court in that case. Indeed, given Georgia's longstanding rule, the only "Court of competent jurisdiction" to decide a separate lawsuit against the receivers would be a court hearing an action that a party in the Affatato case had asked for and received leave to file from the court in that case. Thus, the Consent Order did not give Considine leave to file a separate lawsuit against Murphy and M&M. And without prior leave being properly granted, the trial court had no jurisdiction over this separate lawsuit

against the receivers. Accordingly, it was right for the trial court to dismiss this lawsuit for lack of jurisdiction, and right for the Court of Appeals to affirm the dismissal, and we affirm the judgment on this ground. See WMW, Inc. v. American Honda Motor Co., 291 Ga. 683, 683 (733 SE2d 269) (2012) (affirming the Court of Appeals' judgment on certiorari under the right-for-any-reason doctrine).

3.    Our holding in Division 2 makes it unnecessary to decide whether, in a lawsuit filed with the proper leave, Murphy and M&M would have been entitled to some form of immunity from Considine's claims. If this case had been filed with the proper authorization, the trial court, before allowing Considine's claims against Murphy and M&M to proceed, would have had to decide if the claims were barred by judicial immunity,[4] by constitutional official

---

[4] Judicial immunity shields judicial officers from liability in civil actions based on acts performed in their judicial capacity that are not undertaken in the complete absence of all jurisdiction. See Heiskell v. Roberts, 295 Ga. 795, 800-801 (764 SE2d 368) (2014). This broad immunity, normally applied to judges, also applies to officers appointed by the court if their role is simply "an extension of the court." West End Warehouses, Inc. v. Dunlap, 141 Ga. App. 333, 333 (233 SE2d 284) (1977) (holding that special masters are entitled to judicial immunity). See also Arthur Andersen & Co. v. Wilson, 256 Ga. 849, 849-850 (353 SE2d 466) (1987) (holding that a court-appointed auditor had judicial immunity for functions that the law and the court entitled him to perform, but that an accounting firm hired by the auditor was not immune); Butz v. Economou, 438 U. S. 478, 509-512 (98 SCt 2894, 57 LE2d 895) (1978) (recognizing that non-judges participating in the judicial process may be entitled to absolute immunity under federal law); Property Mgmt. & Investments Inc. v. Lewis, 752 F2d 599, 602 (11th Cir. 1985) (recognizing federal judicial immunity for court-appointed receivers for acts within the scope of their appointed

immunity,[5] or by statutory immunity under the Georgia Tort Claims Act

(GTCA), OCGA §§ 50-21-20 to 50-21-37.[6] Given our conclusion that this case

authority). But see Coleman v. Dunlap, 695 F3d 650, 654 (7th Cir. 2012) (questioning Lewis and similar cases).

[5] Article I, Section II, Paragraph IX (d) of the 1983 Georgia Constitution says:
Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The provisions of this subparagraph shall not be waived.

[6] As we recently explained:
The GTCA "constitutes the exclusive remedy for any tort committed by a state officer or employee . . . while acting within the scope of his or her official duties or employment." OCGA § 50-21-25 (a). The GTCA prohibits lawsuits directly against the state officer or employee for such torts, see OCGA § 50-21-25 (a), (b); instead, the lawsuit must be brought against "only the state government entity for which the state officer or employee was acting" when he allegedly committed the tort, OCGA § 50-21-25 (b). See Shekhawat v. Jones, 293 Ga. 468, 470 (746 SE2d 89) (2013). If the plaintiff does name the state officer or employee individually as a defendant in the complaint, "the state government entity for which the state officer or employee was acting must be substituted as the party defendant." Id.
Hartley v. Agnes Scott College, 295 Ga. 458, 462-463 (759 SE2d 857) (2014) (footnote omitted).

The GTCA defines a "[s]tate officer or employee" to include "an officer or employee of the state, elected or appointed officials, law enforcement officers, and persons acting on behalf or in service of the state in any official capacity, whether with or without compensation." OCGA § 50-21-22 (7). Corporations and other private entities are excluded from this definition, see id., although "[p]erson" is separately defined to include a "corporation, firm, partnership, association, or other such entity," OCGA § 50-21-22 (4). The GTCA also completely immunizes the State from liability for losses resulting from "[l]egislative, judicial, quasi-judicial, or prosecutorial action or inaction" and from "[a]dministrative action or inaction of a legislative, quasi-legislative, judicial, or quasi-judicial nature." OCGA § 50-21-24 (4)-(5). "[T]he official immunity provided directly by the Constitution is, in some respects, different in scope than the immunity provided by the GTCA, both

11

should be resolved based on Considine's failure to comply with the prior leave requirement, however, we vacate Division 3 of the Court of Appeals' opinion. See Oliver v. McDade, 297 Ga. ___ (__ SE2d __) (2015).

Judgment affirmed in part and vacated in part. Thompson, C. J., Hines, P. J., Benham, Hunstein and Melton, JJ., and Judge Stephen D. Kelley concur. Blackwell, J., not participating.

Decided June 1, 2015.

Certiorari to the Court of Appeals of Georgia – 327 Ga. App. 110.

Cecily Considine, pro se.

Carlock, Copeland & Stair, Johannes S. Kingma, Brian S. Spitler, Christopher J. Hoffman, for appellees.

---

in terms of who is protected and in terms of what acts are immunized." Hartley, 295 Ga. at 467.