304 Ga. 394
FINAL COPY

S17G1875.  WITHERS et al. v. SCHROEDER.

Benham, Justice.

This appeal concerns the trial court's disposition of a motion for judgment on the pleadings in favor of appellants Chief Judge Nelly Withers (Judge Withers) of the former DeKalb County Recorder's Court and Troy Thompson (Thompson), who was the court administrator of same.  Appellee Bobby Schroeder prevailed in his appeal before the Court of Appeals,[1] and we granted certiorari to resolve the issue as to whether appellants are immune from suit.  Because we conclude appellants are protected from suit by the doctrine of judicial immunity and its derivative quasi-judicial immunity, we reverse the Court of Appeals' opinion to the extent it allows appellee's suit to move forward against these two appellants.

---

[1] See Schroeder v. DeKalb County, 341 Ga. App. 748 (802 SE2d 277) (2017).

1. The underlying allegations are as follows:

According to [appellee]'s complaint, [appellee] received a traffic ticket in DeKalb County in 2013. He alleged that he appeared in recorder's court and was ordered to pay a fine and that he timely paid the fine, but the staff of the recorder's court failed to close his case. Moreover, he asserted, the court staff falsely informed the Georgia Department of Driver Services [(DDS)] that [appellee] had failed to appear for his hearing, that he had failed to pay his fine, and that his driving privilege should be suspended. See OCGA § 17-6-11 (b) [(2011)].

In his complaint, [appellee] alleged that on August 9, 2013, an officer with the Rockdale County Sheriff's Office arrested [appellee] for driving on a suspended license and took him into custody. [Appellee] asserted that he spent significant time in custody before bonding out. He alleged that on September 26, 2013, an officer with the Newton County Sheriff's Office arrested [appellee] for driving on a suspended license and took him into custody. According to [appellee], at the time of his Rockdale County and Newton County arrests, he was on first offender probation; and the Rockdale County and Newton County arrests led to the initiation of probation revocation proceedings for which [appellee] was arrested and jailed from November 12, 2013, until December 10, 2013.

According to [appellee]'s complaint, at some point, the recorder's court realized that it had provided [DDS] with incorrect information. [Appellee] alleged in the complaint that the court sent a notice of suspension withdrawal to the department. This led to the dismissal of the Rockdale County and Newton County charges and the withdrawal of the probation revocation petition, according to [appellee]. Nonetheless, [appellee] claimed, he lost his job because of these events.

[Appellee] alleged in his complaint that at the relevant time, [Judge] Withers was the chief judge of the DeKalb County Recorder's Court and . . . Thompson was the court administrator. According to [appellee], [appellants] were aware that the recorder's court was understaffed, dysfunctional, and unable to

2

process its cases, and Judge Withers also knew that the court's computer systems produced unreliable data because the systems were flawed or because employees routinely entered data incorrectly, and that employees routinely failed to communicate correct information to [DDS].

[Appellee] sent the county ante litem notice of his claims on November 14, 2014. He filed this action for damages alleging that the defendants failed to perform their ministerial duties with due care and that their actions led to [appellee]'s unlawful arrests. In addition to his state law claims, [appellee] asserted claims under 42 USC § 1983 [§ 1983], alleging that the county, through Judge Withers, the final policymaker, and Thompson had violated his constitutional rights by maintaining customs and policies that caused his deprivation of liberty. These customs included chronically understaffing and underfunding the recorder's court; failing to adequately train employees; failing to implement an audit system that would have caught mistakes; hiring pursuant to a quota system, which increased the rate of errors in the court's communications with [DDS]; and failing to adequately discipline and terminate employees. And they knew that these customs and practices repeatedly had led to innocent persons being arrested, yet they failed to correct the problems.

Schroeder v. DeKalb County, 341 Ga. App. 748 (1) (802 SE2d 277) (2017).

Appellants filed a motion for judgment on the pleadings (see OCGA § 9-11-12 (c)) in which they alleged, in pertinent part, that they were immune from suit based on judicial immunity, official immunity, and qualified immunity. The trial court granted appellants' motion, concluding appellants were immune from suit based on the theories asserted. The Court of Appeals

3

reversed and remanded the matter back to the trial court, ultimately reasoning for each theory of immunity asserted that it was too early in the litigation to determine whether Judge Withers's and Thompson's actions, as alleged by appellee, were administrative or judicial in nature.[2]  As set forth below, the trial court did not err when it granted the motion for judgment on the pleadings, thereby affording appellants relief from suit.

2.  The United States Supreme Court has long recognized the doctrine of judicial immunity which shields judges from being sued and from being held civilly liable for damages based on federal law as a result of carrying out their judicial duties.  See Forrester v. White, 484 U. S. 219 (III) (108 SCt 538, 98 LE2d 555) (1988) (judicial immunity developed in medieval times and continues as a solid doctrine in modern jurisprudence);[3] Stump v.

---

[2]      More specifically, the Court of Appeals made the following rulings relevant to this appeal: (1) the trial court erroneously dismissed appellee's claims that appellants, in their individual capacities, negligently performed ministerial acts, particularly because it noted it was too early in the litigation to determine whether the acts complained of were ministerial or discretionary (id. at 751-752);  (2) the trial court erred when it determined Judge Withers was entitled to judicial immunity because she and her staff were performing nonjudicial acts in regard to their administrative functions (id. at 752-754); (3) the trial court erred when it determined appellants could not be sued in their official capacities as to appellee's § 1983 claims (id. at 754-755); and (4) the trial court erred when it dismissed appellee's § 1983 claims based on appellants' individual capacities on the ground of qualified immunity (id. at 756-757).

The Court of Appeals also affirmed the trial court's dismissal of appellee's claims against Judge Withers and Thompson in their official capacities because of the untimeliness of his ante litem notice. Id. at 749.  The Court of Appeals' ruling on the ante litem notice is not at issue in this appeal and so we leave it undisturbed.

[3] The United States Supreme Court has set forth the rationale for the doctrine of judicial immunity as follows:

4

Sparkman, 435 U. S. 349 (II) (98 SCt 1099, 55 LE2d 331) (1978) (the United States Supreme Court recognized the doctrine of judicial immunity as early as the late 1800s). See also Mireles v. Waco, 502 U. S. 9, 9-10 (112 SCt 286, 116 LE2d 9) (1991). Likewise, Georgia law has long recognized the doctrine of judicial immunity for state law claims. See Heiskell v. Roberts, 295 Ga. 795 (3) (764 SE2d 368) (2014) ("This doctrine of judicial immunity, which the Supreme Court of the United States has said 'is as old as the law,' is essential to the impartial administration of justice."). See also Earl v. Mills, 275 Ga. 503 (1) (570 SE2d 282) (2002) (citing Peacock v. Nat. Bank & Trust Co. of Columbus, Ga., 241 Ga. 280 (2) (244 SE2d 816) (1978); Maddox v. Prescott, 214 Ga. App. 810 (1) (449 SE2d 163) (1994)[4]). There are two

> If judges were personally liable for erroneous [judicial] decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication. Nor are suits against judges the only available means through which litigants can protect themselves from the consequences of judicial error. Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability.

(Citations omitted.) Id. at 226-227 (III).

[4] The Court of Appeals stated in Maddox v. Prescott:
> Our courts have consistently held that judges are immune from liability in civil actions for acts performed in their judicial capacity. Upshaw v. Oliver, 1 Dud. 241 (1832); Gault v. Wallis, 53 Ga. 675 (1875); Calhoun v. Little, 106 Ga. 336 (32 SE 86) (189[8]); Peacock v. National Bank & Trust Co. of Columbus, Ga., 241 Ga. 280 (244 SE2d 816) (1978); West End Warehouses, Inc. v. Dunlap, 141 Ga. App. 333 (233 SE2d 284) (1977).
> It is ultra-important in our democracy to preserve the doctrine of judicial

grounds on which a judge will be denied the absolute protection of judicial immunity: (1) committing an act that is nonjudicial in nature; or (2) acting in the "complete absence of all jurisdiction." Mireles v. Waco, supra, 502 U. S. at 11-12. See also Considine v. Murphy, 297 Ga. 164 (3), fn. 4 (773 SE2d 176) (2015); Heiskell v. Roberts, supra, 295 Ga. at 801; Wilson v. Moore, 275 Ga. App. 493 (1) (621 SE2d 507) (2005). A judge is not deprived of judicial immunity simply because she has allegedly acted mistakenly, maliciously or corruptly. See Stump v. Sparkman, supra, 435 U. S. at 356-357; Robinson v. Becker, 265 Ga. App. 692, 694 (595 SE2d 319) (2004). In this case, there is no contention that appellants were acting in the absence of all jurisdiction because, at the time, traffic offenses like the one at bar were adjudicated in the DeKalb County Recorder's Court. Cf. Heiskell v. Roberts, supra, 295 Ga. at 801 (undisputed that Georgia state court judge had subject matter jurisdiction over traffic cases). See also Wilson v. Moore, supra, 275 Ga. App. at 494 (when a judge has subject matter jurisdiction, he is not acting in the absence of all jurisdiction) (citing Dykes v. Hosemann, 776 F2d 942 (11th Cir. 1985)).

_____

immunity to enable our judges to exercise within their lawful jurisdiction untrammeled determination without apprehension of subsequent damage suits. Hill v. Bartlett, 126 Ga. App. 833, 840 (192 SE2d 427) (1972).

(Punctuation omitted.) 214 Ga. App. at 812-813.

6

Thus, the determinative issue in this case is whether the core function complained of — the report to DDS of a traffic case's disposition — was nonjudicial. "In determining the validity of a party's claim of judicial immunity, a court looks not to functions actually performed by that party, but to the functions that the law entitles the party to perform." Arthur Andersen & Co. v. Wilson, 256 Ga. 849 (353 SE2d 466) (1987). "[T]he relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.' [Cit.] In other words, we look to the particular act's relation to a general function normally performed by a judge…." Mireles v. Waco, supra, 502 U. S. at 13. See also Forrester v. White, supra, 484 U. S. at 227 ("[judicial] immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches") (emphasis in original). Accordingly, in order to determine whether an act is judicial in nature, a reviewing court should consider "(1) whether the act is one normally performed by judges, and (2) whether the complaining party was dealing with the judge in [her] judicial capacity." Stevens v. Osuna, 877 F3d 1293 (III) (A) (2) (11th Cir. 2017) (citing Stump v. Sparkman, 435 U. S. at 362). Here there is no question that appellee was dealing with the recorder's court as part of its official function of adjudicating traffic offenses. Furthermore, when the above-described

7

events occurred, OCGA § 17-6-11 (b) (2011) provided in relevant part as follows:

> The court in which the charges are lodged shall immediately forward to [DDS] . . . the driver's license number if the person fails to appear and answer to the charge against him or her. The commissioner of driver services shall, upon receipt of a license number forwarded by the court, suspend the driver's license and driving privilege of the defaulting person until notified by the court that the charge against the person has been finally adjudicated. . . .

The statute, at the time of the events in question, thus made it clear that *the court* was obligated to report to DDS the status of a traffic case pending before it, including any final adjudication.[5]  Therefore, the court's making a report to DDS was part and parcel of the judicial process necessary to fully resolve traffic offenses pending in the court.[6]  Courts have held that the act of reporting the disposition of a matter pending before a court to an interested government agency is a function that is judicial in nature and inherent to the judicial process. See, e.g., Herring v. Gorbey, 2017 WL 5885668 (C) (3) (E.D. Pa. November 27, 2017) (judge performed a judicial act when she

---

[5] OCGA § 17-6-11 was substantially amended in 2017.  See Ga. L. 2017, pp. 608-609, § 1. Most significantly, the statute now provides that the "clerk of court" rather than the "court" is tasked with making reports to DDS.  See OCGA § 17-6-11 (b) (1) (2017).

[6] This is in contrast to the situation in Forrester v. White, supra, where the judge's act of demoting a probation officer who worked in his courtroom was an administrative act rather than a judicial act such that the judge was not entitled to the protection of judicial immunity.  484 U. S. at 229-230.

8

reported the petitioner, who was an attorney, to the state disciplinary board for petitioner's conduct during a proceeding before the judge); In re McKenzie, 472 BR 455 (IV) (E.D. Tenn. 2012) (bankruptcy trustee's reporting possible criminal violations to the United States attorney was judicial in nature). Similarly, the act of preparing a report at the direction of the judge to aid in the judicial process is a function that is judicial in nature and may be protected by judicial immunity even if a judicial officer, rather than a judge, actually prepares the report. See, e.g., Dellenbach v. Letsinger, 889 F2d 755 (II) (B) (1) (b) (7th Cir. 1989) (preparation and transfer of papers from the trial court to the appellate court is judicial in nature); Hughes v. Chesser, 731 F2d 1489, 1490 (11th Cir. 1984) (preparation of presentencing report by a probation officer is a task judicial in nature).

We cannot, as appellee urges in this appeal, closely examine all the underlying factual allegations[7] involved in any particular act taken. See Stevens v. Osuna, supra, 877 F3d at 1305 (citing Mireles v. Waco, supra, 502 U. S. at 12).[8] Rather, the inquiry into judicial immunity requires that we only

---

[7] Here, appellee opines that appellants negligently hired, supervised and/or trained court employees, that the court's computer system was flawed, that the court was understaffed, and that the court was otherwise dysfunctional.

[8] "If we were to examine, instead, the factual details of the particular act being challenged, 'then any mistake of a judge in excess of his authority would become a "nonjudicial" act, because an improper or erroneous act cannot be said to be normally performed by a judge.'" Id.

look at the nature of the function at issue. Id. In that sense, appellee's allegations about how it came to be that erroneous information was reported to DDS is not determinative as to the application of judicial immunity. Appellee was dealing with the recorder's court in an official manner because he had a pending traffic case and, for that reason alone, the court reported the status of his case to DDS. See Stump v. Sparkman, supra, 435 U. S. at 361 (a factor which tends to show that a judge acted within her judicial capacity is if the matter arose from dealings with the judge in her official capacity). As such, Judge Withers is immune from suit pursuant to the doctrine of judicial immunity.

3. In his complaint, appellee does not make any distinction between the alleged actions taken by Judge Withers and the alleged actions taken by Thompson. To the extent Thompson acted at the direction of Judge Withers in fulfilling the function of reporting the disposition of traffic cases to DDS, he was acting as an "extension of the court" or "arm of the judge" such that he is immune from suit based on quasi-judicial immunity. See Considine v. Murphy, supra, 297 Ga. at 169, fn. 4; Dellenbach v. Letsinger, supra, 889 F2d at 763 ("auxiliary judicial personnel who perform functions at once integral to the judicial process and nonmechanical are entitled to absolute

10

immunity from damages liability for acts performed in the discharge of those functions, just as judges are") (citation and punctuation omitted); Hyland v. Kolhage, 267 Fed. Appx. 836 (IV) (11th Cir. 2008). Accordingly, Thompson is also immune from suit.[9]

4. Because judicial immunity and quasi-judicial immunity are absolute, appellee's claims pursuant to § 1983 cannot be sustained. See Pierson v. Ray, 386 U. S. 547, 554-555 (87 SCt 1213, 18 LE2d 288) (1967). Likewise, none of appellee's state law claims can be sustained. See Earl v. Mills, supra, 275 Ga. at 504; Maddox v. Prescott, supra, 214 Ga. App. at 812.[10]

Judgment affirmed in part and reversed in part. Melton, C. J., Nahmias, P. J., Blackwell and Boggs, JJ., Judge Amanda Harper Mercier, and Chief Judge Stephen Louis A. Dillard concur. Hunstein and Peterson, JJ., not participating.

---

[9] We express no opinion as to the type of immunity, if any, applicable to the "John Doe" court personnel who were named in the complaint below, but are not parties involved in this appeal.

[10] Having found that absolute immunity applies, we need not address the other theories of immunity raised by appellants.

Decided September 10, 2018.

Certiorari to the Court of Appeals of Georgia — 341 Ga. App. 748.

Carothers & Mitchell, Thomas M. Mitchell, Angela C. Couch; Laura K. Johnson, Terry G. Phillips, Shaheem M. Williams, for appellants.

Gerard J. Lupa; Harlan S. Miller III, for appellee.