314 Ga. 582
FINAL COPY

S21G0405.  STANLEY v. PATTERSON et al.

BOGGS, Chief Justice.

We granted certiorari in this case to decide whether the Court of Appeals erred in affirming the trial court's grant of a directed verdict in favor of Appellees, a court administrator and two municipal court case managers, based on quasi-judicial immunity. Appellees failed to remove a bind-over order from a stack of case files bound for the state court solicitor-general's office, catalyzing a chain reaction that eventually led to the improper arrest and jailing of Appellant. We hold that Appellees were not protected by quasi-judicial immunity because their alleged negligence was not committed during the performance of a "function normally performed by a judge." *Heiskell v. Roberts*, 295 Ga. 795, 801 (3) (a) (764 SE2d 368) (2014) (citing *Mireles v. Waco*, 502 U. S. 9, 12-13 (112 SCt 286, 116 LE2d 9) (1991)). We therefore reverse the judgment of

the Court of Appeals.

We also clarify our opinion in *Withers v. Schroeder*, 304 Ga. 394 (819 SE2d 49) (2018). In that case, we held that a court administrator was protected by quasi-judicial immunity when completing a judicial function specifically assigned to the court by statute. Although we noted that the court administrator was acting as an "extension of the court" "[t]o the extent" that he acted at the judge's direction, the decision turned on our conclusion that, under the particular circumstances of that case, the court administrator was exercising a judicial function. *Withers*, 304 Ga. at 399 (3). This remains the touchstone for judicial immunity.

Finally, because the question of whether Appellees' actions were protected by official immunity was raised in their motion for directed verdict but not resolved by the trial court, we direct the Court of Appeals to remand the case to the trial court for further proceedings.[1]

---

[1] The Court thanks amicus curiae Georgia Trial Lawyers Association for its brief.

1. The largely undisputed record shows that Appellant was arrested in December 2013 for driving under the influence and summoned to appear in Atlanta Municipal Court. Although Appellant pled guilty to lesser charges in that court in July 2014 and was sentenced, the matter was forwarded in error to the State Court of Fulton County. Appellant did not receive notice that his case had been sent to the state court for prosecution.

Appellant's DUI case had been forwarded to the state court due to an error by two of the Appellees, case managers employed by the Atlanta Municipal Court. Appellant's file, consisting of the bind-over order and related materials, was originally placed in a stack of case files bound over to the state court and intended to be walked over to the state court solicitor-general's office. After Appellant pled guilty, the judge rescinded the bind-over order, but the case managers failed to physically remove Appellant's file from the stack. One of the case managers sent an e-mail to the municipal court clerk's office in an effort to stop the file from being forwarded, asking the clerk's office to "[p]lease pull it, and I'll be down to retrieve it." But she did

not retrieve Appellant's file, and it was forwarded to the state court solicitor-general for prosecution.

Because he was unaware proceedings against him had commenced in state court, Appellant failed to appear for an arraignment hearing in the State Court of Fulton County. A bench warrant was issued for his arrest in March 2016. In May 2016, during a routine traffic stop, he was arrested and spent the night in the Fulton County Jail. Appellant was later released, and the state court granted the solicitor-general's request for an order of nolle prosequi with respect to the charges against him. Appellant then brought suit against the Atlanta Municipal Court employees who had allowed his case file to be forwarded in error to the state court, alleging negligence and false arrest,[2] and that case proceeded to trial.

At the conclusion of Appellant's presentation of evidence, the trial court granted Appellees' motion for directed verdict on the

---

[2] Appellant withdrew the claim for false arrest during trial, leaving only the negligence claim.

4

ground that they were protected by quasi-judicial immunity, basing its decision on our opinion in *Withers*. In an unpublished opinion, the Court of Appeals agreed, holding that "the trial court correctly concluded that Appellees were acting as [an] 'extension of the court' or 'arm of the judge' such that they are immune from suit based on quasi-judicial immunity." (Punctuation omitted.) *Stanley v. Patterson*, 357 Ga. App. XXVI (Case No. A20A0987) (Oct. 21, 2020) (unpublished). We granted Appellant's petition for certiorari.

2. Appellant contends that Appellees were not protected by quasi-judicial immunity in failing to remove the bind-over order from the stack of case files to be walked over to the state court solicitor-general's office. We agree.

Absolute judicial immunity has protected judicial actions from suit since medieval times. See *Forrester v. White*, 484 U. S. 219, 225

(III) (108 SCt 538, 98 LE2d 555) (1988).[3] Indeed, "[f]ew doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." *Pierson v. Ray*, 386 U. S. 547, 553-554 (87 SCt 1213, 18 LE2d 288) (1967). Georgia similarly has recognized judicial immunity from state law claims for many years. See *Withers*, 304 Ga. at 396-397 (2). See also *Heiskell*, 295 Ga. at 801 (3) ("[J]udicial immunity, which the Supreme Court of the United States has said 'is as old as the law,' is essential to the impartial administration of justice."); *Calhoun v. Little*, 106 Ga. 336 (32 SE 86) (1898); *Maddox v. Prescott*, 214 Ga. App. 810 (449 SE2d 163) (1994); and *Upshaw v. Oliver*, 1 Dud. 241 (Ga. Super. Ct. 1832).

---

[3] The scope and nature of judicial and quasi-judicial immunity under Georgia law is a question of state law, not federal law. Accordingly, United States Supreme Court precedent on this point is persuasive only, not binding. But we view that precedent as quite persuasive, given its thorough assessment of the common-law basis of federal judicial immunity that also formed the basis for Georgia's judicial immunity doctrine. Cf. *Elliott v. State*, 305 Ga. 179, 188 (II) (C) (824 SE2d 265) (2019) ("But decisions of the United States Supreme Court interpreting similar provisions [of the United States Constitution] generally will prove persuasive [to our interpretation of the Georgia Constitution] only to the extent that the Court's decisions actually were guided by th[e] same language, history, and context.").

Because the historical rationale for judicial immunity was protecting judges in the impartial exercise of their independent judgment, the scope of judicial immunity has usually been limited to acts requiring the exercise of such judgment. See *Antoine v. Byers & Anderson, Inc.*, 508 U. S. 429, 435-436 (II) (113 SCt 2167, 124 LE2d 391) (1993). This Court has further specified that, in determining whether judicial immunity applies, the relevant inquiry is whether the actor was performing "a function normally performed by a judge." *Heiskell*, 295 Ga. at 801 (3) (a) (citing *Mireles*, 502 U. S. at 12-13). Accord *Withers*, 304 Ga. at 397-398 (2) (holding that whether an act is judicial or nonjudicial depends on "the 'nature' and 'function' of the act"). Thus, ministerial or routine acts that do not require the exercise of judgment typically have not been afforded judicial immunity. See, e.g., *Heiskell*, 295 Ga. at 801 (3) (a) (declining to apply judicial immunity to a judge's receipt of alleged overpayments in salary).

In general, judicial functions are those "involved in resolving disputes between parties who have invoked the jurisdiction of a

court." *Forrester*, 484 U. S. at 227 (III). Accord *Burns v. Reed*, 500 U. S. 478, 500 (II) (111 SCt 1934, 114 LE2d 547) (1991) (Scalia, J., concurring in part and dissenting in part) (noting that judicial immunity attaches to "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights"). Judicial functions are distinguished from "administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform." *Forrester*, 484 U. S. at 227 (III). Although these other functions may be essential to the operation of the courts or the judicial system, nonjudicial functions have not traditionally been protected by judicial immunity. See *Withers*, 304 Ga. at 397 (2) (explaining that judges are not protected by judicial immunity for acts that are "nonjudicial" or taken in the complete absence of all judicial authority).

Because judicial immunity protects judicial actions, not merely judges, nonjudges may be protected by judicial immunity as well. Officials other than judges are sometimes authorized to make "discretionary judgment[s]" that are "'functionally comparable' to

those [made by] judges." (Citation and punctuation omitted.) *Antoine*, 508 U. S. at 436 (II). When nonjudges perform these kinds of acts, we have concluded that they are protected by "quasi-judicial immunity."[4] *Withers*, 304 Ga. at 394. See also *Housing Authority of the City of Augusta v. Gould*, 305 Ga. 545, 550 (2) (826 SE2d 107) (2019) (explaining that quasi-judicial immunity extends to "the performance of judicial acts under authority conferred upon other persons, boards, or tribunals" (citation and punctuation omitted)). In this context, "quasi" refers to the identity of the actor, not to a different kind of immunity or action. In other words, quasi-judicial immunity applies when judicial immunity is extended to actions by nonjudges, so the same test, and limits, apply. See, e.g., *Arthur Andersen & Co. v. Wilson*, 256 Ga. 849, 849-850 (353 SE2d 466) (1987) (auditor appointed by trial court was "cloaked in judicial immunity"). Cf. *Antoine*, 508 U. S. at 435-436 (II) (court reporters required to record verbatim court proceedings were not protected by

---

[4] Quasi-judicial immunity has been extended "not only to public officials but also to private citizens (in particular jurors and arbitrators)." *Burns*, 500 U. S. at 500 (II) (Scalia, J., concurring in part and dissenting in part).

judicial immunity).

Applying these principles here, Appellees' actions were not protected by quasi-judicial immunity. As discussed above, the lodestar of judicial and quasi-judicial immunity is whether the actions constitute "a function normally performed by a judge." *Heiskell*, 295 Ga. at 801 (3) (a) (citing *Mireles*, 502 U. S. at 12-13). The task at issue here — removing or failing to remove an order from a stack of case files — is a mere physical task requiring no "discretionary judgment" that is "'functionally comparable' to those [made by] judges." (Citation and punctuation omitted.) *Antoine*, 508 U. S. at 436 (II). The judicial action occurred much earlier in the chain of events, when the guilty plea was accepted and entered and the judge's responsibilities concluded. Subsequent steps, such as the removal of the bind-over order, were "administrative . . . functions that judges may on occasion be assigned by law to perform," which were not judicial in nature. *Forrester*, 484 U. S. at 227 (III). Thus, Appellees were not protected by quasi-judicial immunity.

Appellees resist this conclusion. In their view, this case is

10

controlled by our recent decision in *Withers*, where we held that a court administrator was protected by quasi-judicial immunity when he reported — pursuant to a statutory duty — a driver's license number to the Department of Driver Services ("DDS")[5]. Appellees seize on our observation that, "[t]o the extent [the court administrator] acted at the direction of [the judge]" in fulfilling that duty, he was acting as an "extension of the court," and they argue that they were in the same position. *Withers*, 304 Ga. at 399 (3).

But, properly understood, *Withers* — which admittedly pushes the outermost boundary of our judicial-function cases — does not support the conclusion that Appellees' acts in this case are protected by judicial immunity. As an initial matter, the court administrator in *Withers* was carrying out a duty specifically assigned to the court by statute. Moreover, *Withers* made no distinction between the

---

[5] OCGA § 17-6-11 (b) (2011) required that "[t]he court . . . shall immediately forward to the [DDS] . . . the driver's license number if the person fails to appear and answer the charge against him or her." OCGA § 17-6-11 (b) (1) was subsequently amended in 2017 to require that "[i]f . . . the accused fails to dispose of his or her charges or waive arraignment and plead not guilty, the clerk of court . . . shall . . . forward to the [DDS] the accused's driver's license number." See also *Withers*, 304 Ga. at 398 (2) n.5.

11

actions of the judge and the court administrator in deciding to report the driver's license number, a decision involving some measure of discretion. Specifically, the court's obligation to report the driver's license number only arose if the accused did not "appear and answer to the charge" against them, OCGA § 17-6-11 (b) (2011), and whether the accused did so was a matter for judicial determination. Cf. *Davis v. State*, 310 Ga. 547, 548 n.3 (852 SE2d 517) (2020) (court could conclude defendant intended to appeal despite filing a pleading styled as a "motion to remand"). If the court was unsatisfied with the accused's answer or appearance, the driver's license number would be reported; if the court was satisfied, it would not be. Thus, the relevant actions in *Withers* were part of a judicial function assigned to the court by statute. This conclusion, not the court administrator's relationship to the judge, was the basis for our determination that quasi-judicial immunity applied.

In short, *Withers* does not support applying quasi-judicial immunity to the routine, purely administrative acts by the Appellees in this case.

3. Appellees also moved for a directed verdict based on official immunity. The doctrine of official immunity "provides that while a public officer or employee may be personally liable for his negligent ministerial acts, he may not be held liable for his discretionary acts unless such acts are wilful, wanton, or outside the scope of his authority." *Gilbert v. Richardson*, 264 Ga. 744, 752 (6) (452 SE2d 476) (1994). A ministerial act is an action that is "simple, absolute, and definite, . . . requiring merely the execution of a specific duty." (Citation and punctuation omitted.) *Hicks v. McGee*, 289 Ga. 573, 575 (1) (713 SE2d 841) (2011). A discretionary act, on the other hand, requires "personal deliberation and judgment" and acting in a way that is "not specifically directed." (Citation and punctuation omitted.) Id. at 575-576 (1).

Appellant argues vigorously that Appellees' acts were ministerial and involved no discretion. Appellant points to the testimony of one of the Appellees that case managers were supposed to follow the instructions they were given, did not have discretion to do other than what they were told, and "are doing what [they] are

told in the courtroom[;] that's it." But whether a public official's acts are ministerial or discretionary is "determined by the facts of each individual case." (Citation omitted.) *Hicks*, 289 Ga. at 576 (1). Here, the trial court granted a directed verdict solely on the ground of quasi-judicial immunity and did not reach the question of official immunity. The trial court therefore must rule in the first instance on the question of whether official immunity applies.

Accordingly, we reverse the judgment of the Court of Appeals with direction to remand to the trial court for further proceedings consistent with this opinion.

*Judgment reversed and case remanded. All the Justices concur.*

PINSON, Justice, concurring.

Absolute immunity from suit is "strong medicine, justified only when the danger of officials' being deflected from the effective performance of their duties is very great." *Forrester v. White*, 484 U.S. 219, 230 (108 SCt 538, 98 LE2d 555) (1988) (cleaned up). This point is reflected in the narrow scope of judicial immunity as traditionally understood. In my view, *Withers v. Schroeder*, 304 Ga. 394 (819 SE2d 49) (2018), could be read to expand the scope of that immunity to cover routine and ministerial acts merely associated with the judicial function, if a judge directs an employee to undertake those acts. The Court's opinion in this case correctly rejects that broad reading and cabins *Withers* to its facts. With that understanding, I join the Court's opinion in full.

Decided September 20, 2022.

Certiorari to the Court of Appeals of Georgia — 357 Ga. App. XXVI.

*Craig T. Jones*, for appellant.

*Jacquita L. Parks*, for appellees.

*Hasty Pope Davies, Jonathan A. Pope; Edmond Lindsay & Atkins, William J. Atkins; Christopher M. Carr, Attorney General, Stephen J. Petrany, Solicitor-General, Drew F. Waldbeser, Assistant Solicitor-General*, amici curiae.