**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**September 16, 2025**

# In the Court of Appeals of Georgia

A25A1299, A25A1300. MOODY et al. v. HON. KELLI C. RUTHERFORD et al.; and vice versa.

BARNES, Presiding Judge.

These companion appeals arise from the trial court's partial grant of a writ of mandamus concerning rulings made by defendant Judge Kelli C. Rutherford, who presided over the juvenile court hearing at issue, which concerned a delinquency by reason of aggravated battery and other crimes. Plaintiffs Josh and Laura Beth Moody, the parents of the victim, brought this mandamus action to compel Judge Rutherford to grant them access to the records of the hearing. On the parties' motions for summary judgment, the trial court held that under OCGA § 15-11-704, plaintiffs had a right "to examine but not [to] reproduce" the records. On appeal in Case No. A25A1299, plaintiffs argue that their right of access included not only inspection but

copying, including the as-yet unprepared transcript of the hearing; that they were entitled to see materials from the juvenile court's in camera review, including an audiotape of the hearing; and that they were entitled to attorney fees. In the cross-appeal, Case No. A25A1300, Judge Rutherford argues that she was not obligated to make any records available because the proceedings were not open to the public. We find no error and affirm.

"Appellate courts will not interfere with a trial court's decision granting mandamus relief absent a showing that the court manifestly abused its discretion. Review of the trial court's determination on a question of law, however, is de novo." (Citation and punctuation omitted.) *BCG Operations v. City of Homer*, 366 Ga. App. 535, 537 (883 SE2d 549) (2023). Of course, "on appeal from the denial or grant of summary judgment, the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation and punctuation omitted.) Id.

So viewed, the record shows that on April 26, 2023, the juvenile court conducted a hearing on a delinquency petition alleging two counts of "aggravated

battery, [f]elony (OCGA § 16-5-24), in that [P. T.] did maliciously cause [the victim] bodily harm by seriously disfiguring a member of his body, to wit: his nose, by hitting said victim in the nose and deviating victim's nasal septum[,]" and also "[his] teeth, by hitting said victim in the face resulting in a cracked tooth and loosening multiple other teeth[.]" The petition also alleged two counts of aggravated assault resulting in serious bodily injury and strangulation respectively. The allegations in the petition arose from an attack on the victim at a private school in Milledgeville. The delinquency hearing was open to the public, which overflowed into the hall outside. At its conclusion, P. T. was found delinquent as to two counts of simple battery. The hearing was taken down by a court reporter, but no transcript appears in the appellate record.

On June 13, 2023, plaintiffs filed a lawsuit against the school, its former headmaster, and the parents of P. T., alleging that their negligence and ratification of bullying at the school resulted in the attack, and seeking damages. In the superior court where the lawsuit was pending, plaintiffs requested by email and then filed a motion to inspect the juvenile court records. Shortly afterward, Judge Rutherford denied the request. At a February 2024 hearing on plaintiffs' motion to inspect the

records of the delinquency proceeding, the trial court stated that Judge Rutherford had told him that although the matter had been taken down, no transcript had been created and that there was "no expectation of a transcript." The trial court also noted that plaintiffs were not parties to the delinquency proceeding and thus had no right to a transcript unless the parties to that proceeding agreed, which they did not. The trial court then denied plaintiffs' request for a writ of mandamus, noting that there had been no ruling on whether the April 2023 delinquency hearing had been open or closed.

In March 2024, plaintiffs filed this mandamus action, alleging that the April 2023 hearing had been open to the public; that as members of the public, they had the right to inspect the files of that proceeding; and that a writ of mandamus should issue directing Judge Rutherford to grant them access to those files. Plaintiffs also alleged that the court reporter was required to prepare a transcript of the proceeding, which plaintiffs had offered to pay for, and that they were entitled to attorney fees and costs under OCGA § 13-6-11.

The parties subsequently filed several motions, including plaintiffs' motion for judgment on the pleadings. In briefing on these motions, Judge Rutherford argued that

the April 2023 delinquency hearing did not qualify as "open" under OCGA § 15-11-700 (b) because the delinquency petition failed to satisfy the requirements of OCGA § 15-11-522 (5).[1] At the first mandamus hearing, held on July 16, 2024, which included P. T.'s parents as intervenors, Judge Rutherford admitted that the April 2023 hearing had been attended by members of the public, although she had not ordered it "open." The parties then presented argument as to whether the delinquency hearing involved allegations of a "class A designated felony act" such that it was required to be open to the public under OCGA § 15-11-700 (b) (1) and whether the delinquency petition conformed to OCGA § 15-11-522 (5). At the conclusion of the hearing, the trial court reserved ruling but stated his intention of reviewing the audio recording of the delinquency hearing as well as the file. After the parties and the trial court agreed that the inclusion of evidence for the court's consideration converted plaintiffs' motion for judgment on the pleadings into one for summary judgment, the matter was continued.

---

[1] OCGA § 15-11-522 (5) provides that "[a] petition alleging delinquency . . . shall set forth plainly and with particularity" information including "[i]f a child is being charged with a class A designated felony act or class B designated felony act[.]"

After an order staying further discovery, the defendants and the intervenors filed their own motions for summary judgment. A second hearing was held in December 2024, after which the trial court entered an order granting plaintiffs access to the juvenile court file and records, but for purposes of inspection only, and not including any right to make copies, and denying them other relief. The trial court also denied plaintiffs' request that the court reporter be required to produce a transcript. This appeal followed.

1. The first question before us, and the only question raised in the cross-appeal, is whether the public was entitled to be present at the April 2023 delinquency hearing such that plaintiffs have a right not only to inspect but also to copy materials from that hearing.

(a) *Open to the Public.* OCGA § 15-11-700 (b) provides that "[t]he general public shall be admitted to" proceedings including "(1) [an] adjudicatory hearing involving an *allegation of a class A designated felony* act or class B designated felony act," as well as "(5) [a]t the court's discretion, any dispositional hearing involving any proceeding under this article[.]" (Emphasis supplied.) Subsection (j) of the same statute provides that "[t]he general public shall be excluded from proceedings in juvenile court unless

such hearing has been specified as one in which the general public shall be admitted to pursuant to this Code section." And OCGA § 15-11-704 (a) rovides that "[e]xcept as [otherwise] provided . . . , all files and records of the court in a proceeding under this chapter shall be open to inspection *only* upon order of the court."(Emphasis supplied.)

We reject Judge Rutherford's contention in the cross-appeal that under OCGA § 15-11-700, the public was not entitled to attend the April 2023 delinquency hearing. It is not in dispute that the April 2023 delinquency hearing involved "allegations of a class A felony act" – that is, aggravated battery[2] – and that the juvenile court issued a disposition at the conclusion of that hearing. As such, the "general public," including plaintiffs, had a right to be present at that hearing, which the juvenile court did not close by order beforehand, and which Judge Rutherford admitted more than once as having been open to and actually attended by the public. OCGA § 15-11-700 (b) (1), (5).

---

[2] "Class A designated felony act[s]" and "Class B designated felony act[s]" are defined in OCGA § 15-11-2 (12) and (13). "Aggravated battery not upon a public safety officer" is included as a Class A designated felony act in OCGA § 15-11-2 (12) (B).

Judge Rutherford's reliance on OCGA § 15-11-522 is misplaced. That statute provides that "[a] petition alleging delinquency . . . shall set forth plainly and with particularity" information including "[i]f a child is being charged with a class A designated felony act or class B designated felony act[.]" OCGA § 15-11-522 (5). Under the Juvenile Code of 2014, "[w]hether a juvenile is adjudicated for committing a Designated Felony or simply a delinquent act significantly alters the length of the commitment available." *In the Interest of J. H.*, 335 Ga. App. 848, 849-850 (783 SE2d 367) (2016) (while a maximum length of commitment for a delinquent act is 24 months, with the possibility of a 24–month extension, "an adjudication of delinquency for a Class A Designated Felony may result in restrictive custody . . . for as long as 60 months"); see also OCGA §§ 15-11-607 (a), 15–11–602 (a) (2), (c) (1).

OCGA § 15-11-522 affects the potential disposition of the matter, and not the procedural question whether the hearing is open to the public. As the trial court noted at the first motions hearing, OCGA § 15-11-522 makes the identification of the offense as a class A or class B designated felony act "an essential averment" of the petition. But the pleading requirements set out in OCGA § 15-11-522 are different from, and not inconsistent with, the public access provisions of OCGA § 15-11-700 (b). Here,

8

again, there is no dispute that the April 2023 delinquency hearing addressed the petition for delinquency raising the issue of whether P. T. had committed aggravated battery, which is a class A designated felony act. The trial court therefore did not err when it concluded that the delinquency hearing was one that was "open to the public" as mandated by OCGA § 15-11-700 (b) (1).

(b) *Rights to Inspect and/or Copy.* OCGA § 15-11-704 lays out the varying rights of persons seeking information concerning proceedings in the juvenile court, as follows in relevant part:

> (b) The *general public* shall be allowed to *inspect* court files and records for *any proceeding that was open to the public pursuant to paragraphs (1) through (5) of subsection (b) of Code Section 15-11-700*.

> (c) A judge may permit authorized representatives of recognized organizations compiling statistics for proper purposes to *inspect and make abstracts from* official records under whatever conditions upon their use and distribution such judge may deem proper and may punish by contempt any violation of those conditions.

> (d) A judge shall permit authorized representatives of DJJ, the Criminal Justice Coordinating Council, the Administrative Office of the Courts, and the Council of Juvenile Court Judges to *inspect and extract data from* any court files and records for the purpose of obtaining statistics on

9

children *and to make copies pursuant to the order of the court.* Such data shall be used by the inspecting agency for official purposes and shall not be subject to release by such agency pursuant to Article 4 of Chapter 18 of Title 50, nor subject to subpoena. . . .

(Emphasis supplied.) On its face, OCGA § 15-11-704 distinguishes between the general public, which has a right to "inspect court files and records" from any proceeding that was open to the public under the criteria of OCGA § 15-11-700 (b) (OCGA § 15-11-704 (b)); organizations "compiling statistics for proper purposes," who are authorized to "inspect and make abstracts" from official records, arguably (and not at issue here) including court files and records (OCGA § 15-11-704 (c)); and state judicial organizations, who are authorized to "inspect and extract data from . . . court files and records," and "to make copies pursuant to the order of the court" (OCGA § 15-11-704 (d)). In short, only state judicial organizations have the right to make copies from court files, and then only "pursuant to the order of the court."

"[W]here the General Assembly includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that the General Assembly acts intentionally and purposely in the disparate inclusion or exclusion." (Citation and punctuation omitted.) *Truist Bank v. Stark*, 359 Ga. App.

10

116, 119 (1) (854 SE2d 784) (2021). Applying this rule of statutory construction ("expressio unius est exclusio alterius"), it is clear that if the General Assembly had wanted to grant the general public the right to obtain copies from the court files, it would have said so, as it did to state judicial organizations in OCGA § 15-11-704 (d). But OCGA § 15-11-704 (b) grants only a right of "inspection" to the public, and the general rule in juvenile proceedings, expressed in subsection (a) of the same statute, is that except as explicitly provided above or elsewhere in the Juvenile Code, "all files and records of the court . . . shall be open to inspection *only* upon order of the court." (Emphasis supplied.) OCGA § 15-11-704 (a); see also *Florida Pub. Co. v. Morgan*, 253 Ga. 467, 472 (2) (322 SE2d 233) (1984) ("we are unable to conclude that there is any historically-based constitutional presumption of openness applicable to juvenile court proceedings"). It follows that the trial court did not err when it concluded that plaintiffs did not have the right to make copies as part of their permitted inspection of the juvenile court's files. Compare *Undisclosed LLC v. State of Georgia*, 302 Ga. 418, 421-424 (2) (b) (807 SE2d 393) (2017) (Superior Court Rule 21's right of public inspection includes non-parties' right to copy).

2. Plaintiffs also argue that the trial court erred when it denied their request for the transcript of the April 2023 hearing because they had a right to that transcript under OCGA §§ 15-14-5 and 17-8-5.

OCGA § 15-14-5 pertains to court reporters and their supervision by the superior courts, and provides that a court reporter has a duty to prepare a transcript "whenever requested so to do by counsel for any party to such case and upon being paid the legal fees for such transcripts." OCGA § 15-14-5. Here, plaintiffs were not parties to the delinquency proceedings, and the parties have pointed to no evidence showing that any of them has paid for a transcript. Plaintiffs thus lack standing to demand that the court reporter prepare a transcript of the delinquency proceeding.

Appellants have also cited OCGA § 17-8-5, which provides in subsection (a) that "[o]n the trial of all felonies the presiding judge shall have the testimony taken down." But even if OCGA § 17-8-5 applies to juvenile proceedings, the statute is silent as to who can enforce its provisions, and the plaintiffs have not explained how they would have standing to do so in this delinquency proceeding, which is not a felony trial. See *In the Interest of L. C.*, 273 Ga. 886, 889 (1) (548 SE2d 335) (2001) (an order of restrictive custody under former OCGA § 15–11–63, which listed designated

felony acts for restrictive custody of juveniles adjudicated delinquent, including armed robbery and aggravated assault, "is not sufficiently like a criminal adjudication to invoke a constitutional right to a trial by jury"); *In the Interest of J. W.*, 309 Ga. App. 470, 472 (711 SE2d 48) (2011) (an adjudication of delinquency "does not constitute a criminal conviction sufficient to support a conviction or delinquency adjudication for possession of a firearm by a convicted felon"; "the fact that [the juvenile's] prior delinquency adjudication constituted a designated felony act under OCGA § 15–11–63 does not change our result"); Under these circumstances, appellants have not shown that they have a right to the transcript of the delinquency proceeding.

3. Appellants also assert that they have a right to the audio recording of the delinquency proceeding as well as other materials viewed in camera by the superior court and that the superior court erred by failing to file these materials under seal. The Supreme Court of Georgia has noted, however, that "court reporters rarely, if ever, file their audio recordings with the court. It is the transcript of the court proceedings that is the public record of the proceedings once it is filed." *Undisclosed*, 302 Ga. at 425 (3); see also id. at 432 (4) (a) (in a superior court proceeding, "a court reporter's audio recordings not filed with the court are not court records"). Nor have appellants

cited any authority establishing that a superior court has an obligation to seal juvenile court materials viewed in camera. Compare *Green v. Drinnon*, 262 Ga. 264, 264 (1) (417 SE2d 11) (1992) (in a superior court proceeding, "an official court reporter's tape of a judge's remarks in open court is a public record").

4. Appellants argue that they are entitled to attorney fees under OCGA § 13-6-11 because they prevailed on one part of their mandamus claim.

Under OCGA § 13-6-11, expenses of litigation are allowed under the statute only "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." But "a judge is not deprived of judicial immunity simply because she has allegedly acted mistakenly, maliciously or corruptly." *Withers v. Schroeder*, 304 Ga. 394, 397 (2) (819 SE2d 49) (2018). Further, and although our Supreme Court has concluded that the General Assembly waived sovereign immunity in an attorney fee statute by specifically mentioning mandamus actions and authorizing a prevailing party to recover costs, *Roberts v. Cuthpert*, 317 Ga. 645, 649-650 (2)(893 SE2d 73) (2023) (citing OCGA § 16-11-129 (j)), that Court has not held that a mandamus petitioner is actually entitled to attorney

fees from a judge sued in her official capacity. See *Roberts*, 317 Ga. at 651 (3) (probate judge waived his defense of judicial immunity).

More specifically, a judge will be denied the "absolute protection of judicial immunity" only if it is shown that she "(1) committ[ed] an act that is non-judicial in nature" or "(2) act[ed] in the complete absence of all jurisdiction." (Citations and punctuation omitted.) *Withers*, 304 Ga. at 397 (2). In *Earl v. Mills*, 275 Ga. 503 (570 SE2d 282) (2002), for example, our Supreme Court held that a trial court properly dismissed a claim for attorney fees under OCGA § 13-6-11 on the ground of judicial immunity, given that the judge was acting in an official capacity when he entered the order at issue. Id. at 504 (1). Even reviewing the record before us de novo, as we must, we cannot say that Judge Rutherford's actions, all of which were taken in her capacity as a juvenile court judge, could reasonably be construed as non-judicial or extra-jurisdictional. It follows that the trial court did not err when it denied appellants' motion for attorney fees under OCGA § 13-6-11.

*Judgment affirmed in both cases. Brown, C. J., and Watkins, J., concur.*